2004 ME 111

**Roy BICKFORD**

v.

**ONSLOW MEMORIAL HOSPITAL FOUNDATION, INC.**

Supreme Judicial Court of Maine.

Submitted On Briefs: April 27, 2004.

Decided: Aug. 31, 2004.

Eric M. Menhert, Hawkes & Mehnert, Portland, for plaintiff.

Martica S. Douglas, Douglas, Denham, Buccina, & Ernst, P.A., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] We are called upon to determine whether Maine's long-arm statute, 14 M.R.S.A. § 704–A(2)(B) (2003), confers personal jurisdiction over an out-of-state creditor who does not do business in Maine, but who has refused to remedy an alleged defect in a credit report affecting a Maine debtor. Roy Bickford, a Maine resident, appeals from an order of the Superior Court (Penobscot County, *Mead, J.*) dismissing his complaint for lack of personal jurisdiction over the defendant, Onslow Memorial Hospital Foundation, Inc., a North Carolina corporation. Because we conclude that the Maine Superior Court has personal jurisdiction over the hospital, we vacate the judgment of dismissal.

## I. BACKGROUND

[¶ 2] Bickford alleges the following facts in his complaint. He was married in July 1997 and moved to Maine with his wife in June 1998. In September 1998, his wife left the marital residence. She moved to North Carolina that December. Bickford and his wife entered into a separation agreement that provided the parties would each pay their own debts as of August 18, 1998. The two divorced in 1999.

[¶ 3] Sometime after September 1998, Bickford's wife obtained medical services for her daughter at Onslow Memorial Hospital, a nonprofit corporation incorporated and having its place of business in North Carolina. Bickford had no legal relationship with his wife's daughter and never agreed to pay for the services. The hospital did not provide notice to Bickford that it would hold him financially responsible for the treatment. Nonetheless, the hospital notified credit-reporting agencies that Bickford had been "placed in collection" for failing to pay for the services. Although Bickford contacted the hospital and asked it to correct the false statement, it refused to do so. Bickford learned from his bank that he will not qualify for a mortgage because of the apparent outstanding debt to the hospital.

[¶ 4] Based on these allegations, Bickford asserted two counts of defamation, one count of tortious interference with an economic advantage, and one count of intentional infliction of emotional distress. The hospital moved to dismiss the complaint on the ground that Maine lacked personal jurisdiction over the hospital. Bickford opposed the motion and filed an affidavit reiterating the factual allegations of his complaint. The hospital submitted the affidavit of its risk manager who averred that the hospital treats patients in North Carolina, and does not own any property, have any contractual relationships, or solicit any business or funding in Maine or from Maine residents. The court

granted the motion to dismiss and Bickford brought this appeal.

## II. DISCUSSION

### A. Fair Credit Reporting Act

[¶ 5] We begin by noting that this dispute could be addressed through the procedures set out in the federal Fair Credit Reporting Act (FCRA), 15 U.S.C.A. §§ 1681–1681x (1998 & Supp.2004). In enacting FCRA, Congress found that "unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C.A. § 1681(a)(1) (1998). Congress also concluded that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C.A. § 1681(a)(4) (1998).

[¶ 6] Although FCRA provides a process for disputing the accuracy of information in credit reports, 15 U.S.C.A. § 1681s–2 (1998 & Supp.2004), Bickford does not allege that he sought relief under FCRA or that he has had *any* contact with the credit reporting agency that has reported the information provided from Onslow Hospital.

[¶ 7] Nor did the hospital raise the remedies available through FCRA to the motion court.[1] Rather, it relied entirely on the Maine long-arm statute in arguing that the complaint should be dismissed. In its

brief to us, the hospital indicates that if the matter is remanded, the hospital will raise the argument that FCRA preempts Bickford's complaint. The hospital concedes that it failed to address the preemption issue to the motion court.

[¶ 8] We do not, therefore, opine as to FCRA's effect on this cause of action. *See Landmark Realty v. Leasure*, 2004 ME 85, ¶ 10, 853 A.2d 749, 751 ("Absent special circumstances, we do not review unpreserved issues on appeal ...."). Whether FCRA preempts this cause of action, provides alternate remedies, or otherwise affects the jurisdictional analysis is left to another day. We limit our review to the interpretation of Maine's long-arm statute in conjunction with the mandates of due process, and we do not address FCRA's potential impact on the analysis of personal jurisdiction in the present case.

### B. Personal Jurisdiction Over Bickford's Tort Claims

■■■■ [¶ 9] Accordingly, we go on to determine whether the exercise of personal jurisdiction over Onslow Hospital by the Maine Superior Court in the present case complies with the provisions of Maine's long-arm statute, 14 M.R.S.A. § 704–A, and the Due Process Clause of the United States Constitution, U.S. CONST. amend. XIV, § 1.[2]

■■■■ [¶ 10] Maine's long-arm statute,

---

1. The only mention of FCRA to the motion court appears in one sentence of the hospital's reply memorandum in support of dismissal: "Plaintiff's claims are likely covered by the Fair Credit Reporting Act, a federal statute." A party may not, however, raise new issues in a reply memorandum. M.R. Civ. P. 7(e).

2. A motion to dismiss for lack of personal jurisdiction may be decided prior to trial

based on the parties' affidavits. *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 12, 735 A.2d 984, 988. In such circumstances, the plaintiff must make a prima facie showing of jurisdiction, and his written allegations are construed in his favor. *Id.* ¶ 14, 735 A.2d at 988–89. When the facts are undisputed, as in the present case, we review the decision of the motion court de novo. *Id.* ¶ 14, 735 A.2d at 989.

14 M.R.S.A. § 704–A,[3] authorizes jurisdiction over nonresident defendants only to the extent that the exercise of that jurisdiction comports with due process. *Jackson v. Weaver,* 678 A.2d 1036, 1039 (Me. 1996); *Murphy v. Keenan,* 667 A.2d 591, 593 (Me.1995); *see also* ME. CONST. art. I, § 6–A. "Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1." *Murphy,* 667 A.2d at 593. For Maine to exercise jurisdiction over a nonresident defendant, three conditions must exist to satisfy due process: "(1) Maine must have a legitimate interest in the subject matter of this litigation; (2) the defendant, by [its] conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Id.* The plaintiff bears the burden of satisfying the first two prongs based on specific facts in the record, after which the burden shifts to the defendant to demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Id.* at 594. The record is construed in the manner most favorable to the plaintiff. *Id.* We address each condition in turn.

1. Legitimate Interest in the Subject Matter of the Litigation

[¶ 11] Maine has a legitimate interest in allowing its residents a forum in which to seek redress when out-of-state creditors refuse to correct erroneous credit reports. *See id.* Credit reports substantially influence the ability of individuals to obtain financing for purchases that are vital to their lives and livelihoods. If a creditor actively refuses to correct the false credit report of a Maine resident, Maine has a legitimate interest in protecting the resident, whether or not the creditor is located outside of Maine's boundaries. *Cf. Suttie v. Sloan Sales, Inc.,* 1998 ME 121, ¶ 5, 711 A.2d 1285, 1286 (holding that "Maine has a legitimate interest in protecting its citizens from fraudulent employment practices and providing its citizens with a means of redress against non-residents"). Bickford has satisfied his burden to demonstrate Maine's legitimate interest in the litigation of this controversy. *See Murphy,* 667 A.2d at 593.

2. Reasonable Anticipation of Litigation in Maine

[¶ 12] In addressing this second prong, Bickford relies on two United States Supreme Court cases in which the defendants were authors, editors, or publishers of periodicals that enjoyed circulation and readership in the states where suit was commenced. *Calder v. Jones,* 465 U.S. 783, 785–86, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 772, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). In each case, the Court emphasized that the effect of the allegedly libelous material was felt in the state where the suit was filed. *Calder,* 465 U.S. at 789–90, 104 S.Ct. 1482; *Keeton,* 465 U.S. at 776–77, 104 S.Ct. 1473. Nonetheless, "[t]he commission outside the forum state of an act that has conse-

---

**3.** The following portion of the long-arm statute is relevant in the present case:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

. . . .

B. Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State

. . . .

14 M.R.S.A. § 704–A(2) (2003).

quences in the forum state is *by itself* an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state." *Murphy,* 667 A.2d at 595 (quotation marks omitted) (emphasis added). Rather, the effect of the out-of-state conduct in Maine "is merely a factor to be considered in light of the relevant facts that apply to the minimum contacts analysis." *Id.*

[¶ 13] We need not decide whether simply filing a report with a national credit agency that might share its information with lenders in Maine could establish a connection between the hospital and Maine that would justify Maine's exercise of control. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295–96, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (stating that foreseeability that a vehicle, once purchased, would travel out-of-state is not in itself sufficient to confer personal jurisdiction over the seller in another state); *Cisneros v. Trans Union, LLC,* 293 F.Supp.2d 1156, 1162–63, 1166 (D.Haw. 2003) (holding no personal jurisdiction when out-of-state parties reporting debts did not correspond with the plaintiff and evidence failed to establish they knew where the plaintiff lived). In the present case, Bickford alleges that the hospital went beyond the mere act of reporting a credit incident. He alleges that the hospital realized the impact its report was having on a Maine resident after it engaged in an exchange with Bickford about the status of the credit report. Because the hospital was thereafter on notice that it was injuring a Maine resident by failing to take steps to eliminate the use of the allegedly libelous statement, it could reasonably have anticipated being required to respond to litigation in Maine courts. The hospital's conduct affected a Maine resident, and after Bickford contested the report, the hospital can be understood to have

"intentionally directed" its conduct toward a Maine resident. *Calder,* 465 U.S. at 790, 104 S.Ct. 1482. We conclude that the hospital could reasonably anticipate being haled into court in Maine. *See Murphy,* 667 A.2d at 593.

### 3. Traditional Notions of Fair Play and Substantial Justice

▮▮▮▮ [¶ 14] We must next address the third prong's requirement that the exercise of jurisdiction comport with traditional notions of fair play and substantial justice. *Murphy,* 667 A.2d at 593. " 'The determination of fairness [for purposes of personal jurisdiction] depends upon the facts of each case.' " *Jackson,* 678 A.2d at 1039 (quoting *Harriman v. Demoulas Supermarkets, Inc.,* 518 A.2d 1035, 1038 (Me. 1986)). In making this determination, "we consider the number, nature, and purpose of the defendant's contacts with Maine, the connection between those contacts and the cause of action, the interest of Maine in the controversy, and the convenience to both parties." *Id.*

[¶ 15] Maine has a strong interest in protecting its residents from abuses in credit reporting, and the hospital's alleged contact with Maine forms the basis for Bickford's tort claims against the hospital. Although the hospital's contact with Maine has not been voluminous, its action as a creditor failing to correct an erroneous report has allegedly resulted in a substantial impact on a Maine resident. Although it is inconvenient for the hospital to defend a suit in Maine and potential witnesses are out-of-state, it would also be burdensome for Bickford, whose credit has allegedly been compromised, to prosecute an action in North Carolina. The hospital has failed to demonstrate that it offends traditional notions of fair play and substantial justice to hale the hospital into court in Maine.[4]

[¶ 16] We must therefore vacate the dismissal of Bickford's complaint. *See also Rivera v. Bank One,* 145 F.R.D. 614, 616, 625 (D.P.R.1993) (concluding, in a diversity case, that the exercise of jurisdiction over an out-of-state creditor that allegedly reported a false debt was constitutional under the Due Process Clause); *cf. Bils v. Nixon, Hargrave, Devans & Doyle,* 179 Ariz. 523, 880 P.2d 743, 745–47 (Ct.App. 1994) (concluding that Arizona had jurisdiction over out-of-state defendants that improperly provided, obtained, and used the credit report of an Arizona resident).

The entry is:

Judgment of dismissal vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

---

4. Again, because the existence of remedies and process through FCRA was not raised in the motion court, we do not decide whether the application of that Act would alter our analysis of whether it is fair to hale the hospital into court in the State of Maine to respond to tort claims.