STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-07-260

DONALD L. GARBRECHT
LAW LIBRARY

MAY 2 0 2008

JACKOLYN SHREMSHOCK,

Plaintiff,

v.                                                          ORDER

HYUNDAI MOTOR CO., et al.,

Defendants.

RECEIVED

Before the court is a motion by defendant Hyundai American Technical Center,

Inc. ("Hyundai Technical") to dismiss for lack of personal jurisdiction.[1]

On November 9, 2007, after this motion had been fully briefed, plaintiff filed a

motion to supplement her opposition to the motion to dismiss, stating that Hyundai

Technical had recently produced additional documents relevant to the jurisdictional

issues. The court granted Shremshock's motion to supplement on December 6, 2007 but

no supplemental memorandum was filed. Instead, in February 2008, plaintiff wrote to

request a discovery conference with respect to a dispute that had apparently arisen with

respect to additional discovery on the jurisdictional issues.[2]

The court has now reviewed the submissions of the parties to date and the letters

submitted by the parties in connection with the discovery dispute and concludes that it

---

[1] Two other defendants in this action, Hyundai Motor Co. ("Hyundai Motor") and Hyundai
Motor America ("Hyundai America"), are also foreign corporations (from the Republic of Korea
and California respectively) but have not moved to dismiss on personal jurisdiction grounds.
The remaining defendant, Allen's Auto Sales, Inc., is a Maine corporation.

[2] Because the court was at that time still awaiting a supplemental memo which might have
mooted the discovery dispute, it did not immediately schedule a discovery conference.

needs to defer decision on Hyundai Technical's motion to dismiss until the facts are more fully developed. *See Dorf v. Complastik Corp.*, 1999 ME 133 ¶ 12, 735 A.2d 984, 988.[3]

Maine's long arm statute, 14 M.R.S. § 704-A, authorizes personal jurisdiction over non-resident defendants to the extent that exercise of such jurisdiction is consistent with due process under the U.S. Constitution. *Bickford v. Onslow Memorial Hospital Foundation Inc.*, 2004 ME 111 ¶ 10, 855 A.2d 1150, 1154-55. Three conditions must exist to satisfy due process: (1) Maine must have a legitimate interest in the subject matter of the litigation; (2) the defendant by its conduct could reasonably have anticipated litigation in Maine; and (3) the exercise of personal jurisdiction by Maine courts comports with traditional notions of fair play and substantial justice. *Id.*

Plaintiff has the burden of satisfying the first two conditions, after which the burden shifts to defendant to demonstrate that personal jurisdiction in Maine does not comport with traditional notions of fair play and substantial justice. *Id.*

Courts often rule on a motion to dismiss for lack of personal jurisdiction prior to trial without an evidentiary hearing. The plaintiff must go beyond the pleadings and make a factual showing but must only make a *prima facia* showing that jurisdiction exists and plaintiff's allegations of jurisdictional facts should be construed in plaintiff's favor. If facts necessary to determine personal jurisdiction are disputed in the written affidavits, the court may decide to hold an evidentiary hearing. *Dorf v. Complastik Corp.*, 1999 ME 133 ¶¶ 12-15, 735 A.2d 984, 988-89. However, under limited circumstances, the court may defer a ruling on the motion until the facts are more fully developed or even until trial. *Id.* ¶ 12; M.R.Civ.P. 12(d).

---

[3] Hyundai Technical is a wholly owned subsidiary of Hyundai Motor Company and is represented by the same law firm as the other Hyundai defendants. Deferring a decision, therefore, does not appear to result in any substantial prejudice to Hyundai Technical.

2

To date, the factual showing made by plaintiff in opposition to the motion is not extensive, primarily consisting of (1) a December 18, 2002 letter from Hyundai Technical to the National Highway Traffic Safety Administration (NHTSA) concerning a voluntary recall of 1995 and 1996 Hyundai Accents for inspection and possible replacement of front lower control arms[4] and (2) Hyundai Technical's sworn answers to interrogatories. The interrogatory answers establish that Hyundai Technical has provided engineering and design services to Hyundai Motor since 2002, *see* Hyundai Technical response to Interrogatory 9, but do not shed much additional light on the jurisdictional issue.

Hyundai Technical, for its part, has submitted an affidavit stating that its principal place of business is in Michigan, that it has never registered as a foreign corporation in Maine or been authorized to transact business here, that it has never owned real or personal property in Maine, has never paid taxes in Maine, has never transacted or solicited business in Maine, has never had any offices or employees in Maine, has never advertised in Maine, and has never engaged in the business of advertising, marketing, selling or leasing Hyundai vehicles to the public. June 28, 2007 Affidavit of Mark Torigian.

With its reply papers, Hyundai Technical also submitted an affidavit from a Hyundai American engineer stating that he had inspected plaintiff's vehicle and it did not exhibit the problem with the front lower control arm that was the subject of the December 18, 2002 letter relating to a voluntary recall. However, the court is not inclined to decide a motion based on factual material submitted in reply papers to which the party opposing a motion has not had a chance to respond.

---

[4] Although not appended to any affidavit, the authenticity of the December 18, 2002 letter is apparently not disputed by Hyundai Technical. *See* October 19, 2007 Affidavit of William Stewart.

Whether personal jurisdiction exists here would appear to turn on the second of the three conditions identified in *Bickford* – whether the defendant by its conduct could reasonably have anticipated litigation in Maine. 2004 ME 111 ¶ 10, 855 A.2d at 1154-55, quoting *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995). Hyundai Technical does not appear to dispute the first *Bickford* condition: that Maine has a legitimate interest in the subject matter of this litigation. If this were disputed, plaintiff would be required to make a factual showing on this issue, *see Dorf*, 1999 ME 133 ¶ 12, 735 A.2d at 988, but it appears likely that plaintiff would be able to satisfy the court on this issue if, as she alleges, she is a resident of Maine, the accident causing her injury occurred on the roads of this state, she received medical treatment here, and relevant evidence and witnesses are located in Maine. *See Harrison v. Demoulas Supermarkets Inc.*, 518 A.2d 1035, 1036-37 (Me. 1986). In addition, Hyundai Technical has not advanced any separate arguments explaining why personal jurisdiction over Hyundai Technical would not comport with traditional notions of fair play – the third *Bickford* condition - beyond its contention that Hyundai Technical had no reason to anticipate litigation in Maine.

The issue of whether Hyundai Technical could reasonably have anticipated litigation in Maine (the second *Bickford* condition) turns on two subsidiary questions – whether this lawsuit arises from Hyundai Technical's transaction of business in Maine, *see* 14 M.R.S. § 704-A(2)(A), or alternatively, whether Hyundai Technical either committed a tortious act within Maine or caused the consequences of a tortious act to occur within Maine. 14 M.R.S. § 704-A(2)(B).

As far as the court can tell, the proposed discovery sought by plaintiff is primarily directed to the first issue: whether – despite the Torigian affidavit – Hyundai Technical has engaged in the transaction of any business within Maine. In light of the Torigian affidavit, this may not be a particularly promising avenue of inquiry,

4

particularly since the Maine long arm statute appears to require not just some transaction of business in Maine but also that the cause of action arises out of that transaction of business. *See Murphy v. Keenan*, 667 A.2d at 594 (the question is whether it is reasonable to require the defendant to defend "the particular suit which is brought here"); 14 M.R.S. § 704-A(4); *Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 720 (1st Cir. 1991). However, the court has not ruled on the discovery issues and it would be premature at this point to conclude that plaintiff cannot possibly prevail on this theory.[5]

Plaintiff argues that because Hyundai Technical authored the December 2002 letter relating to a voluntary recall in "salt belt" states including Maine, it should reasonably have anticipated litigation in Maine. This argument ignores, however, that the December 2002 letter does not constitute the transaction of business in Maine nor, as far as the court can see, does it constitute the causing of a tortious act to occur in Maine. 14 M.R.S. § 704-A(2)(B). That leaves the question of whether Hyundai Technical's actions with respect to the recall notice could be found to have caused the consequences of a tortious act to occur in Maine. *Id.*

On the face of the complaint, it could perhaps be argued that failing to implement a recall caused the consequences of a tortuous act to occur in Maine. However, plaintiff has not yet offered any facts to support the contention that Hyundai Technical (as opposed to the other Hyundai defendants) was responsible for and failed

---

[5] Plaintiff can theoretically also show that Hyundai Technical should not be treated as a separate entity because it is a shell corporation and/or an alter ego of one of the other Hyundai defendants. Some of plaintiff's discovery appears to be addressed to that issue. To avail himself of this doctrine, however, plaintiff would have to surmount the considerable hurdles of showing (1) that Hyundai Technical or its parent abused the corporate form and (2) an unjust or inequitable result would occur if the court recognized Hyundai Technical's separate corporate existence. *Johnson v. Exclusive Properties Unlimited*, 1998 ME 244 ¶ 6, 720 A.2d 568, 571. Common ownership and management is not a sufficient basis to find Hyundai Technical is a shell or alter ego.

to implement a front lower control arm recall[6] – assuming further that there is some evidence the front lower control arm played a role in the injuries allegedly suffered by plaintiff. Finally, plaintiff has not offered any facts to suggest that Hyundai Technical provided any engineering and design services with respect to the 1996 Hyundai Accent that plaintiff was driving at the time of her injury.

At this point, however, the record is not sufficiently developed on these issues, and the history of this case indicates that there will be further submissions, that these are not necessarily likely to be filed in the immediate future, and that there are pending discovery issues that will need to be resolved first.

The entry shall be:

A decision on defendant Hyundai America Technical Center Inc.'s motion to dismiss for lack of personal jurisdiction is deferred. Hyundai America Technical Center Inc. may renew that motion once pending discovery disputes are resolved, at the conclusion of discovery, or at trial.

The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED:     May _9_, 2008

_____
Thomas D. Warren
Justice, Superior Court

---

[6] Hyundai Technical's answers to interrogatories asserts that Hyundai Technical does not send out recall notices. Response to Interrogatory No. 1.

6

F COURTS
ınd County
3ox 287
ne 04112-0287

HARRISON RICHARDSON ESQ
PO BOX 9545
PORTLAND ME 04112

*Allens Rute*
*Sale*

land County
Box 287
ine 04112-0287

*Hyunda Motor*
*America*

*Hyunda America*
*Tech. Ctr. Inc*

JOHN HATCH ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101

IF COURTS
and County
3ox 287
ine 04112-0287

BENJAMIN GIDEON ESQ
PO BOX 961
LEWISTON ME 04243

*Plaintiff*