STATE OF MAINE
Cumberland, ss.

BUSINESS AND CONSUMER COURT

Docket No. BCD-CV-12-73

AMH-CUM - 10/22/2012

VICTOR J. VIGNA, JR. and
CERTIFIED INTERPRETING, LLC

Plaintiffs

v.

JENNIFER MALONEY, PAUL TRACY
and PARTNERS INTERPRETING, LLC

Defendants

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Pursuant to M.R. Civ. P. 12(b)(2), Defendants Jennifer Maloney, Paul Tracy, and Partners Interpreting, LLC (PI) have filed a motion to dismiss the complaint of Plaintiffs Victor Vigna, Jr. and Certified Interpreting, LLC (CI) for lack of personal jurisdiction.

### Factual And Procedural Background

The following relevant facts are drawn from the complaint and other materials submitted by the parties. Some of the jurisdictional facts are disputed. "When the court proceeds only upon the pleadings and affidavits of the parties, the plaintiff need only make a prima facie showing that jurisdiction exists, and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 14, 735 A.2d 984. Accordingly, the focus at this stage of the case has to be on the facts alleged by Plaintiffs in support of jurisdiction, the issue being whether those facts make out a *prima facie* showing.

The jurisdictional allegations made by the Plaintiffs include the following:

1

Vigna owns and operates CI, an interpreting agency in Maine. (Vigna Aff. ¶ 10.) In August 2009, Tracy and Maloney[1] approached Vigna about forming a new interpreting agency in Massachusetts, and as a result, PI was formed. (Vigna Aff. ¶ 9.) (Vigna Aff. ¶¶ 15, 19.) In the course of the parties' negotiations, Tracy and Maloney indicated that they were willing to travel to Maine to meet with Vigna. (Vigna Aff. ¶ 18.) Vigna also agreed to lend Tracy and Maloney sixty thousand dollars. (Vigna Aff. ¶ 16.) Under the consulting agreement with PI that eventually was reached, Vigna performed services remotely for PI between October 2009 and January 2012 from his office in Maine by telephone, email, and other electronic means. Vigna participated in three conference calls per week, on average, from September 1, 2009, through August 31, 2011, from Maine. (Vigna Aff. ¶ 27.)

Vigna asserts he is a Maine resident, living in Harpswell, driving with a Maine driver's license, and filing Maine state income taxes as a Maine resident. (Vigna Aff. ¶¶ 2-4.) Defendants assert that Vigna is a Massachusetts resident, living in Boxford. (Defs.' Aff. ¶ 3.) Vigna admits to owning a house in Boxford, but asserts that his elderly parents, and not he, reside there. (Vigna Aff. ¶ 5.) The parties also dispute the number of meetings and the nature of those meetings in Maine. Though Defendants assert they met in Maine with Vigna only three times, (Defs.' Aff. ¶¶ 13, 15-16), Vigna says there were at least seventeen meetings related to his work for PI in Maine, including meetings with Tracy and Maloney. (Vigna Aff. ¶¶ 22-23).

With respect to the litigation, several of the potential witnesses, including Vigna, are located in Maine. (Vigna Aff. ¶¶ 43-44.), although others are located outside Maine.

---

[1] Tracy is a resident of Massachusetts; Maloney is a resident of Rhode Island. (Compl. ¶¶ 3-4.)

## Discussion

"The term 'personal jurisdiction' refers to '[a] court's power to bring a person into its adjudicative process.'" *Fore v. Benoit*, 2012 ME 1, ¶ 5, 34 A.3d 1125 (quoting BLACK'S LAW DICTIONARY 930 (9th ed. 2009)). When a defendant challenges personal jurisdiction,

> the plaintiff's showing in opposition to the motion must be made on specific facts set forth in the record[.] This means that [the] plaintiff must go beyond the pleadings and make affirmative proof. This showing may be made by affidavit or otherwise.

*Dorf*, 1999 ME 133, ¶ 13, 735 A.2d 984 (quotation marks and citations omitted).

As noted above, it is a plaintiff's burden to make a *prima facie* showing that personal jurisdiction exists. *Id.* at Personal jurisdiction has both statutory and constitutional requirements that must be met before a non-resident defendant can be forced to defend a suit in Maine--that is, both the requirements of Maine's long-arm statute and constitutional due process must be satisfied. 14 M.R.S. § 704–A (2011); *accord Estate of Hoch v. Stifel*, 2011 ME 24, ¶ 22, 16 A.3d 137.

1.    **Are the requirements of Maine's long-arm statute met?**

Maine's long arm statute, provides in pertinent part:

> Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

> A.   The transaction of any business within this State;

14 M.R.S. § 704–A(2)(A).

Defendants focus their arguments on the due process prong of personal jurisdiction rather than Maine's long arm-statute. Nevertheless, it is clear that Vigna's allegations, construed in his favor as they must be, are sufficient to qualify Defendants as nonresidents transacting business within Maine. *See Dorf*, 1999 ME 133, ¶ 14, 735 A.2d 984 (stating facts

3

should be construed in the plaintiff's favor). The Law Court has held that by negotiating and contracting within the State of Maine, a defendant has transacted business within the state. *Cavers v. Houston McLane Co., Inc.*, 2008 ME 164, ¶ 16, 958 A.2d 905. In that case, an out of state entity, the Houston Astros, only had contact with the plaintiff once in Maine when an Astros representative came to the plaintiff's home in Maine to sign him to their baseball team. *Id.* ¶ 2. On appeal, the Law Court found that this single act of negotiating and contracting with the plaintiff in Maine was sufficient to satisfy Maine's long arm statute. *Id.* ¶ 15.

In the present case, Vigna asserts that there have been at least seventeen meetings related to his work for PI in Maine, including meetings with Tracy and Maloney. (Vigna Aff. ¶¶ 22-23.) Although the parties' negotiations did not occur exclusively in Maine as in *Cavers*, Defendants admit they had three meetings with Vigna in Maine related to PI. (Defs.' Aff. ¶¶ 15-16.) Further, although Defendants argue that Vigna is a Massachusetts resident, his affidavit avers otherwise. (Vigna Aff. Exh. A.) The Defendants' activity in Maine as described in the parties' affidavits satisfy the long-arm statute.

2.    **Is due process satisfied?**

If Maine's long-arm statute applies, due process is satisfied "when: (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Estate of Hoch*, 2011 ME 24, ¶ 25, 16 A.3d 137. The plaintiff "bears the burden of satisfying the first two prongs based on specific facts in the record, after which the burden shifts to the defendant to demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

4

## A.   *Does Maine have a legitimate interest in the subject matter of the litigation?*

The Legislature has stated: "It is declared, as a matter of legislative determination, that the public interest demands that the State provide its citizens with an effective means of redress against nonresident persons who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the state's protection." 14 M.R.S. § 704-A(1). The Law Court has held that Maine's interest in the litigation, however, "must be beyond mere citizenry . . . such as . . . the location of witnesses and creditors within its border." *Connelly v. Doucette*, 2006 ME 124, ¶ 8, 909 A.2d 221 (alterations in original) (quotation marks omitted).

For example, in *Fore v. Benoit*, the Law Court determined that Maine had a legitimate interest in the subject matter of the litigation when the defendant, a Massachusetts resident and owner of a Massachusetts accounting firm, had transacted business within the State by providing tax and accounting services to a Maine business over the phone, while the plaintiff was acquiring a golf course in Maine. 2012 ME 1, ¶¶ 11-12, 34 A.3d 1125. The court reasoned that Maine had an interest in providing a forum to protect the interests of the plaintiff as a resident of Maine and as a purchaser of a business that operates on property located in Maine. *Id.* ¶ 12. The court also noted that the witnesses were alleged to be located primarily in Maine. *Id.*

Conversely, in *Murphy v. Keegan*, the Law Court found that the plaintiff did not meet his burden to show that Maine had a legitimate interest in the litigation when the only state interest the plaintiff asserted was providing a forum for redress against a non-resident. 667 A.2d 591, 594 (Me. 1995). There, the court reasoned that the plaintiff, a resident of Maine who purchased a boat in New Hampshire with a single transaction, had not shown an interest beyond that of mere citizenry. *Id.* The court also noted that the plaintiff, and not the

5

defendant, initiated the contact and that nothing in the disputed contract contemplated future transactions between the two parties. *Id.*

Defendants' opposition to jurisdiction appears to rely heavily on the premise that they and Vigna all reside outside Maine, and thus that Maine has no legitimate interest in resolving litigation between out-of-state residents. However, construed in a light favorable to the Plaintiff, *see Dorf,* 1999 ME 133, ¶ 14, 735 A.2d 984, Vigna's affidavit indicates that he is a Maine resident. (Vigna Aff. ¶ 4.) Moreover, Vigna alleges that, apart from residency, he operates a business in Maine, and has conducted multiple transactions in the state of Maine with Defendants. (Vigna Aff. ¶¶ 10, 22-23.) Furthermore, the Defendants initiated contact with the Plaintiffs (Vigna Aff. ¶ 9), and there are witnesses located in Maine. (Vigna Aff. ¶ 43.) Plaintiffs gave met their burden to show that Maine has an interest in the litigation.

## B.    *Is it reasonable to require the Defendants to litigate in Maine?*

The second part of the test focuses on a defendant's contacts with Maine. Sufficient contact exists "when the defendant purposefully directs his or her activities at Maine residents or creates continuing obligations between himself or herself and the residents of Maine." *Estate of Hoch,* 2011 ME 24, ¶ 27, 16 A.3d 137 (quotation marks omitted). This part of the test also requires the court to consider whether the defendant's out of state conduct intentionally or only incidentally affected a Maine resident. *See Bickford,* 2004 ME 111, ¶¶ 12–13, 855 A.2d 1150.

In *Bickford,* the Law Court held that there was personal jurisdiction over an out-of-state creditor who did not do business in Maine, but who refused to remedy an alleged defect in a credit report affecting a Maine debtor. *Id.* ¶ 1. The defendant hospital allegedly directed its conduct toward a Maine resident intentionally, and on that basis the Law Court held that the Maine court could exercise personal jurisdiction consistent with due process. *Id.* ¶ 13.

6

Defendants' assertion they could not have been expected to face litigation in Maine, b Maine rests, at least in part, on a mistaken premise regarding his residency. For purposes of this motion, Vigna has made a *prima facie* showing of Maine residency. *See Dorf,* 1999 ME 133, ¶ 14, 735 A.2d 984. Thus, Plaintiffs have made a *prima facie* showing that the Defendants directed their conduct toward a Maine resident and a Maine business by intentionally doing business and creating continuing obligations with a Maine resident. (Vigna Aff. ¶¶ 17, 22-23.) This showing suffices to satisfy the second prong of the due process test.

Alternatively, Defendants argue that Maloney and Tracy, as individuals, did not direct their activities at Maine residents or create continuing obligations between themselves and residents of Maine. While some jurisdictions have applied the fiduciary shield doctrine to limit the scope of personal jurisdiction over individuals acting on behalf of an entity, Maine has not. *See RF Technologies Corp. v. Applied Microwave Technologies, Inc.,* 369 F. Supp. 2d. 24, 32 (D. Me. 2005) ("Because Maine courts have never stated that the fiduciary shield doctrine limits the scope of personal jurisdiction. . . an individual employee's corporate contacts-even in the absence of personal contacts-with Maine are sufficient to satisfy the Maine long-arm statute and the federal Constitution."); *see also Maine Rubber Intern. v. Env't Mgmt. Grp., Inc.,* 298 F. Supp. 2d 133, 136 (D. Me. 2004) (refusing to apply the fiduciary shield doctrine because Maine has not limited the scope of its personal jurisdiction on anything besides federal constitutional grounds).[2]

Plaintiffs have met their burden on the second part of the test.

---

[2] Therefore, an analysis of whether Maloney and Tracy were acting as individuals or as corporate representatives of PI is unnecessary at this stage, and the determination of whether either of them is personally liable on any of the Plaintiffs' claims must await another day. Plaintiffs bear the burden of proving that Maloney and Tracy are personally liable on any theory, and nothing herein should be taken as deciding that substantive issue.

7

C.  *Does the exercise of jurisdiction by a Maine court comport with traditional notions of fair play and justice?*

The final part of the test "requires consideration of a variety of factors including the nature and purpose of defendant's contacts with [Maine], the connection between the contacts and the cause of action, the number of contacts, the interest of [Maine] in the controversy, and the convenience and fairness to both parties." *Cavers*, 2008 ME 164, ¶ 36, 958 A.2d at 913 (quotation marks omitted). The burden is on the defendant to show that the exercise of jurisdiction is unfair. *See Bickford*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

Defendants' argument regarding fairness hinges on their claim that Vigna's residency is in Massachusetts. Defendants assert that most of the witnesses are in Massachusetts and it would be inconvenient to litigate in Maine. (M. Dismiss 6.) Vigna, however, asserts that the witnesses will be mostly in Maine. (Vigna Aff. ¶ 43.) Finally, Plaintiffs have alleged that the breach of contract actions arise out of Defendants' connections with Maine and business with Vigna, and Defendants purposefully sought out Vigna, a Maine resident, to assist them with their business. Based on these factors, the court concludes that the Defendants have not met their burden to demonstrate unfairness.

### Conclusion

Based on the foregoing analysis, the Defendants' Motion to Dismiss for lack of personal jurisdiction is denied.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference into the docket.

Dated: October 22, 2012.

A.M. Horton
Justice, Business & Consumer Court

Entered on the Docket: 10|23|12
Copies sent via Mail __ Electronically ✓

8

BCD-CV-12-73

VICTOR J. VIGNA, JR. and
CERTIFIED INTERPRETING, LLC

Plaintiffs

v.

JENNIFER MALONEY, PAUL TRACY
and PARTNERS INTERPRETING, LLC

Defendants

Attorneys

Plaintiff(s):          Gene Libby, Esq
                       Libby, O'Brian, Kingsley & Champion, LLC


Defendant(s):          David Levesque, Esq
                       Law Office of David Levesque, PA