STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
DOCKET NO. BCD-CV-18-23

ELDAR INVESTMENTS, LLC, et al.,      )
                                     )
        Plaintiffs,                  )
                                     )
    v.                               )        ORDER ON DEFENDANT D. GREG
                                     )        RUSHTON'S MOTION TO DISMISS
HEALTH OUTCOMES WORLDWIDE,           )
INC., et al.,                        )
                                     )
        Defendants.                  )

Pending before the Court is Defendant D. Greg Rushton's motion to dismiss pursuant to

M.R. Civ. P. 12(b)(2) and 12(b)(6). Plaintiffs oppose the motion. The Court heard oral argument

on the motion on June 29, 2018. All parties appeared through counsel.

PROCEDURAL POSTURE

Plaintiffs Charles Sidman and Eldar Investments, LLC filed their one-count Complaint

alleging violation of Maine's Uniform Securities Act against the multiple individual and entity

Defendants on January 16, 2018. The Complaint alleges that each of these Defendants is liable to

the Plaintiffs for inducing them to invest in the Defendant Health Outcomes Worldwide ("HOW"),

a Nova Scotia-based company, through untrue statements or the omission of material facts. (Pl's

Compl. ¶¶ 50-52.)[1] Three Defendants—including HOW and its principal officer, Corinne

McIssac—failed to answer the Complaint within twenty days after service of the summons and

complaint and on June 14, 2018, had an entry of default and default judgment entered against each

of them. *See* M.R. Civ. P. 12(a). The remaining Defendants, with the exception of Mr. Rushton,

timely filed answers to the Complaint and cross-claims against Defendants HOW and/or Ms.

---

[1] Plaintiff's motion to amend the complaint was granted on June 29, 2018. References to the Complaint are to the Amended Complaint filed with that motion.

1

McIssac. Mr. Rushton did not answer the Complaint but instead filed the instant motion to dismiss. *See* M.R. Civ. P. 12(b).

FACTS

Plaintiffs' cause of action arises from their investment in HOW through the intermediary of Defendant Business Investment Group, Inc. ("BIG"), a Canadian company, and HOW's allegedly fraudulent conduct with regards to that investment. Mr. Sidman alleges that he met two of BIG's agents (both named Defendants in this lawsuit) at an investment meeting and based on their misrepresentations agreed to buy $150,000 in HOW stock. (Pl's Compl. ¶¶ 19-27.) Mr. Sidman was thereafter invited to join HOW's board of directors; in that role, he discovered evidence of what he believed to be investment fraud. (Pl's Compl. ¶¶ 29-33.) Mr. Sidman alleges in his Complaint and swears by affidavit that he brought this to the attention of HOW's other directors and Mr. Rushton and insisted they report the fraud and take steps to remedy it, but that the board declined to act on his concerns. (Pl's Compl. ¶¶ 36-37, 44-48; Sidman Aff. ¶¶ 10-12.)[2]

Mr. Rushton is an attorney licensed to practice law in the Province of Nova Scotia, Canada, where he lives and works. (Ruston Aff. ¶¶ 4-5.) As part of his corporate law practice as a partner at The Breton Law Group in Sydney, Nova Scotia, Mr. Rushton served as corporate counsel to HOW. (*Id.* ¶¶ 6, 14.) Mr. Rushton advised HOW on corporate governance and related matters. (*Id.* ¶ 14.) Mr. Rushton has never conducted any professional activities in Maine and has not been to Maine since he passed through on his way to Fenway Park in 2011. (*Id.* ¶¶ 7-8.) Mr. Rushton has never represented Plaintiffs, did not have any part in the solicitation of Plaintiffs' investments in HOW, did not draft the presentation deck or subscription agreements shared with Mr. Sidman or

---

[2] Unlike a motion to dismiss for failure to state a claim brought pursuant to M.R. Civ. P. 12(b)(6), the Court is not limited to the factual allegations in the complaint and the Court may consider affidavits submitted by the parties on a motion to dismiss for lack of personal jurisdiction under M.R. Civ. P. 12(b)(2). M.R. Civ. P. 12(b); *see also Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 12, 735 A.2d 984.

2

forward those materials to Plaintiffs, and never handled any of the Plaintiffs' money. (*Id.* ¶¶ 9-10, 15-18.)

Plaintiffs do not necessarily dispute these facts. (Pl's Opp'n Mot. Dismiss 10-11.) However, by affidavit, Mr. Sidman swears that he interacted with Mr. Rushton after he joined HOW's board and that Mr. Rushton was involved in the board's ultimate decision not to take the action urged by Mr. Sidman to remedy the alleged fraud. (Pl's Compl. ¶¶ 44-48; Sidman Aff. ¶ 12.)

STANDARD OF REVIEW

A party may move to dismiss a complaint before filing a responsive pleading on the grounds that the court lacks personal jurisdiction over that party. M.R. Civ. P. 12(b)(2). "Maine's long-arm statute, 14 M.R.S.A § 704-A, authorizes jurisdiction over nonresident defendants only to the extent that the exercise of that jurisdiction comports with due process. Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150 (citations omitted). For Maine to exercise jurisdiction over a nonresident defendant consistent with the due process requirements of the Fourteenth Amendment, three requirements must be met: "(1) Maine must have a legitimate interest in the subject matter of [the] litigation; (2) the defendant, by [his] conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Id.* (quoting *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995)). The plaintiff has the burden to show that the first two requirements are satisfied; if she meets her burden, the burden shifts to the defendant to show that the third has not been met. *Id.*

## DISCUSSION

### 1. Maine Has A Legitimate Interest in the Subject Matter of the Litigation

Mr. Rushton argues that Maine's only interest in this lawsuit is the fact the Plaintiffs are Maine citizens and that our Law Court has held that this is insufficient to exercise personal jurisdiction over a nonresident defendant. *See Murphy*, 667 A.2d at 594. (Mot. Dismiss 6-7.) Plaintiffs respond that Maine indeed has a legitimate interest in providing redress to its citizens in regard to securities sold to them in Maine by means of misstatement or omission. (Pl's Opp'n Mot. Dismiss 10.)

The Court disagrees that Maine's interest in this lawsuit is limited to the Plaintiffs' Maine citizenship. Our Law Court has consistently held that Maine has an interest in protecting its citizens from the fraudulent practices of noncitizens. *See Fore, LLC v. Benoit*, 2012 ME 1, ¶¶ 11-12, 34 A.3d 1125 (citing 14 M.R.S. § 704(2)(A)), *Bickford*, 2004 ME 111, ¶ 11, 855 A.2d 1150; *Suttie v. Sloan Sales*, 1998 ME 121, ¶ 5, 711 A.2d 1285; *see also Connelly v. Doucette*, 2006 ME 124, ¶ 8, 909 A.2d 221 ("Maine does have an interest [where a plaintiff] felt the effects of her injury here.").

While the second two prongs of the jurisdictional test are directed at the defendant and fairness to him, the case law cited above suggests that the first prong is instead focused on the interests of the jurisdiction in the litigation generally and not the case against any particular defendant. Notably, Mr. Rushton is the only Defendant who has moved to dismiss for lack of personal jurisdiction. Regardless of any ultimate decision on the merits as to any Defendant, Maine has an interest in the resolution of this dispute.

### 2. The Defendant Could Not Have Reasonably Anticipated Litigation in Maine

Mr. Rushton argues that he has no contacts in Maine and as such could not have reasonably anticipated litigation here. (Mot. Dismiss 7-8.) Plaintiffs argue that Mr. Rushton's interaction with

4

Mr. Sidman during Mr. Sidman's tenure as a HOW board member, including his specific awareness of Mr. Sidman's concerns and Mr. Rushton's failure to act on those concerns at Mr. Sidman's request, present analogous facts to those presented in *Bickford*, 2004 ME 111, 855 A.2d 1150, where our Law Court held that dismissal for lack of personal jurisdiction was improper.

The Court concludes that the facts alleged and presented by the parties in their affidavits do not bring this case within the scope of *Bickford*'s holding. In *Bickford*, the plaintiff alleged that the defendant hospital

> went beyond the mere act of reporting a credit incident.[3] [Plaintiff] allege[d] that the hospital realized the impact[4] its report was having on a Maine resident after it engaged in an exchange with [the plaintiff] about the status of the credit report . . . . The hospital's conduct affected a Maine resident, and after [plaintiff] contested the report, the hospital can be understood to have "intentionally directed" its conduct to a Maine resident . . . the hospital could reasonably anticipate being haled into court in Maine.

*Id.* ¶ 13. By contrast, the facts of this case present a circumstance where Plaintiffs have alleged merely that Mr. Rushton has committed "an act that has consequences in the forum state[,]" which "*by itself* [is] an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state." *Id.* ¶ 12 (quoting *Murphy*, 667 A.2d at 595) (emphasis in original). "Rather, the effect of the out-of-state conduct in Maine is merely a factor to be considered in light of the relevant facts that apply to the minimum contacts analysis." *Id.* (quotation marks omitted). In this case, the happenstance of Plaintiffs' Maine citizenship is the only thread

---

[3] "The hospital did not provide notice to [plaintiff] that it would hold him financially responsible [his wife's daughter's] treatment. Nonetheless, the hospital notified credit-reporting agencies that [plaintiff] had been 'placed in collection' for failing to pay for the services." *Bickford*, 2004 ME 111, ¶ 3, 855 A.2d 1150.

[4] "Although [plaintiff] contacted the hospital and asked it to correct the false statement, it refused to do so. [Plaintiff] learned from his bank that he will not qualify for a mortgage because of the apparent outstanding debt to the hospital." *Id.* ¶ 3.

connecting Mr. Rushton's allegedly tortious conduct to Maine. Our Law Court has been clear that this single thread is an insufficient contact. *See Connelly*, 2006 ME 124, ¶ 10, 909 A.2d 221 (concluding that defendant, an allegedly negligent driver, could not reasonably anticipate litigation in Maine arising out of an out-of-state collision because "the collision could have occurred with a resident of any state").

Plaintiffs make much of the fact that Mr. Rushton failed to act on Mr. Sidman's concerns after Mr. Sidman joined HOW's board and that Mr. Rushton did not urge the board to take the steps Mr. Sidman felt necessary to remedy the allegedly fraudulent acts that Mr. Sidman swears Mr. Rushton himself participated in. (Sidman Aff. ¶ 11-12.) Critically, however, these averments establish no ongoing harm to Plaintiffs beyond the fact that they were not reimbursed the money they felt they were entitled to. By contrast, in *Bickford*, the hospital was alleged to have "realized the impact its report *was having* on a Maine resident" when the plaintiff brought it to the hospital's attention by, for example, preventing him from obtaining a mortgage. *Bickford*, 2004 ME 111, ¶¶ 3, 13, 855 A.2d 1150 (emphasis added). The mere act of notifying an out-of-state actor of a potential claim cannot be sufficient to establish personal jurisdiction over the actor, as the *Bickford* Court itself noted expressly in its decision. *Id.* ¶ 12.

### 3. Traditional Notions of Fair Play and Substantial Justice

Because the Court has concluded that Plaintiffs have failed to satisfy the second prong of the personal jurisdictional test, the Court need not address whether Mr. Rushton has satisfied the final requirement. However, the Court briefly notes that "the number, nature, and purpose of [Mr. Rushton's] contacts with Maine [and] the connection between those contacts and the cause of action" would tend to militate strongly against concluding that this Court's exercise of personal jurisdiction over Mr. Rushton's person would comport with traditional notions of fair play and

6

substantial justice. *See Bickford*, 2004 ME 111, ¶ 14, 855 A.2d 1150 (quoting *Jackson v. Weaver*, 678 A.2d 1036, 1039 (Me. 1996)).

## CONCLUSION

Based on the foregoing it is hereby ORDERED:

That Defendant D. Greg Rushton's motion to dismiss is GRANTED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: August 28, 2018

Richard Mulhern
Judge, Business and Consumer Court

| | | |
|---|---|---|
| ELDAR INVESTMENTS, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER DENYING PLAINTIFFS' MOTION FOR APPROVAL OF ATTACHMENT AND TRUSTEE PROCESS |
| | ) | |
| HEALTH OUTCOMES WORLDWIDE, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pending before the Court is Plaintiffs Eldar Investments, LLC and Charles Sidman's motion for approval of attachment and trustee process. *See* M.R. Civ. P. 4A, 4B. Defendants Business Instincts Group, Inc. ("BIG"), Cameron Chell, and Arden Styles (collectively the "BIG Defendants") and Defendant Robert Kennedy oppose the motion. The Court heard oral argument on the motion on October 2, 2018. Erica M. Johanson, Esq. appeared for Plaintiffs, Adam S. Taylor, Esq. appeared for the BIG Defendants, and Gavin G. McCarthy, Esq. appeared for Mr. Kennedy.

## BACKGROUND

This case arises out of Plaintiffs' one-count Complaint alleging violation of Maine's Uniform Securities Act, 32 M.R.S. § 16509, filed on January 16, 2018 against the multiple individual and entity Defendants, all or most of whom are Canadian citizens or companies. Plaintiffs filed the instant motion concurrent with the filing of their Complaint. As a result of delays affecting service on Mr. Kennedy and multiple orders granting uncontested motions to enlarge deadlines, the instant motion was not fully briefed until August 6, 2018.

## STANDARD OF REVIEW

A party seeking either attachment or trustee process must show "that it is more likely than

not that the plaintiff will recover judgement, including interest and costs, in an amount equal to or greater than the aggregate sum of attachment . . . ." M.R. Civ. P. 4A(c); M.R. Civ. P. 4B(c); *Libby O'Brien Kingsley & Champion, LLC v. Blanchard*, 2015 ME 101, ¶ 5, 121 A.3d 109. Accordingly, the movant must show a greater than fifty percent chance of successfully recovering a judgment. *Richardson v. McConologue*, 672 A.2d 599, 600 (Me. 1996). "Motions for attachment must be supported by affidavit evidence." *Lindner v. Barry*, 2003 ME 91, ¶ 5, 828 A.2d 788 (citing *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993)). Orders for attachment and trustee process are reviewable on appeal for an abuse of discretion or clear error. *Libby O'Brien Kingsley & Champion, LLC*, 2015 ME 101, ¶ 5, 121 A.3d 109.

## DISCUSSION

The parties agree that the issue before the Court is whether Plaintiffs have demonstrated a greater than fifty percent likelihood of success on the merits through affidavit evidence. Dr. Sidman has filed three affidavits; one with his initial motion and one each in response to the opposition memoranda of the BIG Defendants and Mr. Kennedy and the assertions in the affidavits supporting those memoranda. The parties' affidavits also attach multiple exhibits. The Court has reviewed all of this material, considered the arguments of the parties, and concludes that Plaintiffs have not met their burden of showing that it is more likely than not that they will prevail on the merits.

As Plaintiffs conceded in their opening remarks to the Court at the oral argument, the affidavits of the parties are in conflict. Plaintiffs argue that the exhibits attached to Dr. Sidman's affidavits, particularly certain emails between Dr. Sidman and Defendants, demonstrate that Dr. Sidman's affidavits are more credible than those of the Defendants and lead inexorably to the conclusion that Mr. Kennedy and the BIG Defendants made misstatements or omitted a material

2

fact in soliciting Dr. Sidman's investment. 32 M.R.S. § 16509(3). *See Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826 (in deciding motion for attachment "the court assesses the merits of the complaint and the weight and credibility of the supporting affidavits"). Defendants agree that the affidavits are in conflict but argue that the exhibits are at best ambiguous and suggest that the Court cannot determine that it is more likely than not that they are liable to Plaintiffs for violating 32 M.R.S. § 16509(3) on the limited record before it.

The Court agrees with Defendants' argument. The "[a]ll shareholders hold the same" language from Sidman's Exhibit B, for example, is susceptible to differing interpretations, and therefore does nothing to resolve the conflict between the affidavits. Defendants presented equally credible affidavit explanations for why the communications between the parties do not amount to a Securities Act violation and the Court cannot resolve the ambiguity at this early stage in the litigation before any discovery has occurred. In sum, Plaintiffs have failed to meet their burden of showing that it is more likely than not that they will prevail on the merits. Plaintiffs' motion must be denied.

## CONCLUSION

Based on the foregoing, the entry will be:

Plaintiffs' motion for approval of attachment and trustee process is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 10-9-2018

_Michael A. Duddy_
Michael A. Duddy
Judge, Business and Consumer Court

3