ENTERED JAN 1 4 2015

STATE OF MAINE
KENNEBEC, ss.

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-14-49
MMM-KEN-11-26-14

)
STATE OF MAINE )
)
   Plaintiff, )
)
v. )
)
THE MCGRAW-HILL COMPANIES )
INC. and STANDARD & POOR'S )
FINANCIAL SERVICES, LLC, )
)
   Defendants. )

ORDER ON DEFENDANTS' RULE
12(b)(2) MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION

## I. INTRODUCTION

Defendants, McGraw-Hill Companies, Inc., n/k/a/ McGraw-Hill Financial, Inc. ("McGraw-Hill") and Standard & Poor's Financial Services, LLC ("S&P") (collectively "Defendants") move this court to dismiss the State of Maine's ("State of Maine" or "Plaintiff") Complaint for lack of personal jurisdiction. The Defendants argue that the State of Maine has no specific jurisdiction over the Defendants, as the State's cause of action does not arise from the Defendants' conduct within the forum state.

The State alleges in its Complaint that the Defendants directed misleading statements about S&P's independence and objectivity over a period of time that began in 2001 and continued through 2011 to Maine consumers in violation of the Maine Unfair Trade Practices Act. The State further avers that the allegations in the Complaint fulfill the State's *prima facie* burden of establishing that this court has personal jurisdiction over the parties and asks that if this court fails to find personal jurisdiction, the State, in the alternative, be allowed to conduct discovery relevant to the Defendants' motion and file an amended Complaint.

1

## II. STATEMENT OF FACTS

Plaintiff, State of Maine, filed the subject Complaint on February 5, 2013, in Kennebec County Superior Court, pursuant to 5 M.R.S.A § 207 ("UTPA"). (Compl. ¶ 1.) Defendant McGraw-Hill is a New York corporation with its principal place of business at 122 Avenue of the Americas, New York, NY 10020. McGraw-Hill is registered with the Maine Secretary of State to conduct business within the State of Maine. (Compl. ¶ 2.) Defendant S&P is a Delaware limited liability company and a wholly owned subsidiary of McGraw-Hill. (Compl. ¶ 3) Within the S&P business unit is Standard & Poor's Rating Services ("SPRS"). SPRS operates as a credit rating agency that assigns credit ratings on a broad range of securities. *Id.*

In 2001, S&P rated various structured finance products. (Compl. ¶ 5.) Said products included various Residential Mortgage Backed Securities ("RMBS") and Collateralized Debt Obligations ("CDO") which comprised many mutual funds and pension funds of Maine residents, retirees, and workers. (Compl. ¶ 18.) Objectivity and independence are material to the services provided by S&P. (Compl. ¶ 23.) As a result, S&P advertised its objectivity and independence and vowed to such behavior in its Code of Conduct. (Compl. ¶ 26.) However, the Plaintiff believes that the Defendants' use of the "Issuer Pays Model" compromised S&P's independence and integrity.[1] (Compl. ¶ 34.) This established a conflict of interest because the revenues earned came from banks and other entities whose securities it rated. (Compl. ¶ 36.) Said conflict was not disclosed to the public. (Compl. ¶ 37.) The State further alleges that S&P knew that its analytical models could not assess certain complex securities with the requisite accuracy, yet it continued to rate these products. (Compl. ¶ 40.)

---

[1] Under the Issuer Pays Model, the issuer of securities pays credit rating agencies to rate the investments. (Compl. ¶ 35.)

2

# III. STANDARD OF REVIEW

The question of jurisdiction is always fundamental, and is a question of law. *See Lindner v. Barry*, 2002 WL 1974091, at *2 (Me. Super. Aug. 9, 2002) (citing 20 Am Jur. 2d Courts § 54). "The proper exercise of personal jurisdiction in Maine hinges on the satisfaction of two requirements: first . . . the Maine Long-Arm statute, 14 M.R.S.A. § 704-A . . . [must confer] personal jurisdiction on the court; and second . . . the exercise of jurisdiction pursuant to the long-arm statute [must comply] with constitutional due process requirements." *Jackson v. Weaver*, 678 A.2d 1036, 1038 (Me. 1996).

"Maine's jurisdictional reach is coextensive with the Due Process Clause of the Constitution." *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995) (citing U.S. Const. amend. XIV, § 1; *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993); *Frazier v. Bankamerica Int'l*, 593 A.2d 661, 662 (Me. 1991); *Caluri v. Rypkema*, 570 A.2d 830, 831 (Me. 1990), *cert. denied*, 498 U.S. 818 (1990); *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 2-3 (Me. 1979)). Due process in the exercise of jurisdiction over an out-of-state defendant requires the satisfaction of the following three-pronged test: (1) Does the forum state have a legitimate interest in the subject matter of the action? (2) Should the defendant by his conduct reasonably have anticipated litigation in the forum state? and (3) Would the exercise of jurisdiction comport with "traditional notions of fair play and substantial justice[?]" *Murphy*, 667 A.2d at 593 (citations omitted); *see also Foreside Common Dev. Corp. v. Bleisch*, 463 A.2d 767, 769 (Me. 1983). "The burden of establishing that jurisdiction is proper under the first two prongs falls on the plaintiff; once the plaintiff has met that burden, it is up to the defendant to show that jurisdiction is *improper* under the third prong." *Elec. Media Int'l v. Pioneer commc'ns of Am.*, 586 A.2d 1256, 1258-59 (1991) (citing *Rypkema*, 570 A.2d at 831 n.2) (emphasis in original).

3

"Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits." *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 6, 735 A.2d 984 (citing *Federal Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir.1992)). The Method chosen by the trial court in determining said motion dictates the evidentiary showing necessary for the a plaintiff to survive a defendant's Motion to Dismiss. *Id.* (citing *Boit v. Gar–Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir.1992)). When the court determines a motion to dismiss for lack of personal jurisdiction prior to trial, without holding an evidentiary hearing, "[t]he plaintiff's showing in opposition to the motion 'must be made on specific facts set forth in the record . . . .'" *Id.* ¶ *13* (citing *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 5, 711 A.2d at 1286). This means the Plaintiff 'must go beyond the pleadings and make affirmative proof.'" *United Elec. Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir.1993) (quoting *Boit*, 967 F.2d at 675). This showing may be made by affidavit or otherwise. *See Serras v. First Tennessee Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir.1989).

However, when:

> The court proceeds only upon the pleadings and affidavits of the parties, the plaintiff 'need only make a prima facie showing that jurisdiction exists,' and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." Determining personal jurisdiction based on initial affidavits alone, without additional evidence, is a "useful means of screening out cases in which personal jurisdiction is obviously lacking, and those in which the jurisdictional challenge is patently bogus." Moreover, it prevents defendants from defeating personal jurisdiction merely by filing a written affidavit opposing the jurisdictional facts alleged by the plaintiff.

*Dorf v. Complastik Corp.*, 1999 ME 133, ¶¶ 14-16, 735 A.2d 984 (citations omitted). In this case, the hearing is non-testimonial, meaning the court proceeds only upon the pleadings and affidavits of the parties, and the plaintiff "need only make a prima facie showing that jurisdiction exists . . ." *Rypkema*, 570 A.2d at 832 (quoting *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 8 (1st Cir. 1986)).

4

## IV. DISCUSSION

The Parties make no claim that general jurisdiction exists in this case, thus the court has reserved its analysis for determining whether specific jurisdiction exists in order to subject the Defendants to suit in this Court.

### *Specific Jurisdiction and Due Process Requirements*

Maine's long-arm statute, 14 M.R.S. § 704-A, applies to the fullest extent permitted by the Due Process Clause of the United States Constitution. As mentioned above, due process is satisfied when: (1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could anticipate litigation in Maine; and (3) the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice. *Fore, LLC v. Benoit*, 2012 ME 1, ¶ 7, 34 A.2d 1125. The court analyzes each prong of the test below.

### *a. The State's Legitimate Interest in the Subject Matter of This Litigation*

The question the Court must answer here is whether "Maine has 'a minimal governmental interest in the litigation and consequent power to decide if it is fair to assert it.'" *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 4 (Me. 1979) (citing Woods, *Pennoyer's Demise: Personal Jurisdiction after Shaffer and Kulko and a Modest Prediction Regarding World-Wide Volkswagen Corp. v. Woodson*, 20 Ariz. L. Rev. 861, 881-82 (1978)). "To demonstrate that Maine has a legitimate interest in the subject matter of the litigation, a plaintiff must assert more than a mere interest 'in providing a Maine resident with a forum for redress against a nonresident.'"[2] *Grimm v. Allen*, 2006 WL 3707895, at *2 (Me. Super. Oct. 16, 2006) (citing *Murphy v. Keenan*, 667 A.2d 591, 594 (Me.

---

[2] Courts in Maine have held that Maine's interest in the litigation "must be beyond mere citizenry . . . such as . . . the location of witnesses and creditors within its border." *Fore*, 2012 ME 1, ¶ 7, 34 A.3d 1125 (citing *Connelly v. Doucette*, 2006 ME 124, ¶ 8, 909 A.2d 221 (alterations in original) (quotation marks omitted).

1995)). The State has "an interest in regulating and/or sanctioning parties who reach out beyond one state and create continuing relationships and obligations with Maine citizens for the consequences of their activities." *Id.* (citing *Elec. Media Int'l*, 586 A.2d at 1259 (citations omitted)).

The State argues that this action was brought by the Maine Attorney General's office in the interest of the public to protect Maine citizens from the Defendants' unfair and misleading business practices. (Pl.'s Opp. Mot 5.) Specifically, the State alleges that S&P misrepresented that its business models were independent, objective, and free from influence from those paying for the ratings. (Compl. ¶ 46(A).) Further, S&P misrepresented its competence to provide expert analysis of structured finance products. (Compl. ¶ 46(B).) In this case, "none of the representations made by S&P are [Maine-specific]. Rather, they exist on the internet and in other public sources accessible to anyone." *State of Ariz. v. McGraw-Hill Companies, Inc*, CV-2013-001188 (Ariz. Super. Ct., Mar. Cnty., Sept. 29, 2014).[3] However, the State of Maine alleges that S&P has provided credit ratings to asset backed securities that were used within the State of Maine. (Compl. ¶ 44.) By engaging in said acts and practices, S&P made or caused to be made representations to Maine consumers which are material and likely to mislead in violation of 5 M.R.S. § 207.[4] (Compl. 45.)

---

[3] In *State of Arizona v. McGraw-Hill*, the State of Arizona filed a complaint alleging that the Defendants committed consumer fraud by falsely representing that S&P's ratings were objective and independent. The superior court determined that the "Defendant (S&P) is in the business of assigning credit ratings to certain securities, with the expectation that investors will rely on its ratings . . . . [While] the complained-of statements were not directed at Arizona, [they] are publicly available on the internet and elsewhere." *Id.* Further, the State of Arizona alleged that S&P's public statements concerning its independence and objectivity were made in connection with transactions with Arizona residents, companies, and governmental entities. The court determined that the State had personal jurisdiction over the Defendants. *Id.*

[4] The Law Court has held:

Maine has a legitimate interest in allowing its residents a forum in which to seek redress when out-of-state creditors refuse to correct erroneous credit reports. Credit reports substantially influence the ability of individuals to obtain financing for purchases that are vital to their lives and livelihoods. If a creditor actively refuses to correct the false credit report of a Maine resident, Maine has a legitimate

6

Thus, reviewing the facts in light most favorable to the Plaintiff, the Court finds that the State of Maine has a legitimate interest in the subject matter due to the Defendants intentionally entering into business relationships with consumers and entities in the State of Maine.

### b. *Anticipation of Litigation in Maine*

Maine requires an assessment of whether a foreign corporation has sufficient contacts with the forum State to "make it reasonable . . . to require the corporation to defend the particular suit which is brought there." *Harriman*, 518 A.2d 1035, 1037 (1986) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). "[T]he defendant must 'purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[5] *Murphy v. Keenan*, 667 A.2d 591, 594 (Me. 1995). The requisite minimum contacts are present when "(1) the activities of the defendant have been directed at the forum's residents; (2) the defendant deliberately engages in significant activities in the forum; or (3) the defendant creates continuing obligations between itself and residents of the forum." *Cavers v. Houston McLane Co., Inc.*, 2008 ME 164, ¶ 24, 958 A.2d 905.

In Maine, the level of minimum contacts necessary to support jurisdiction is relatively low. For example, as the State has noted, the Law Court has found such minimum contacts for the mere preparation of tax services,[6] out-of-state fraudulent credit reporting,[7] and single contractual

---

interest in protecting the resident, whether or not the creditor is located outside of Maine's boundaries.

*Bickford v. Onslow Mem'l Hosp. Found. Inc.*, 2004 ME 111, ¶ 11, 855 A.2d 1150. Similarly, credit ratings also influence the ability of individual to obtain financing and carry on business.

[5] "The reason for the purposeful availment requirement is to guard against a nonresident defendant being haled into a forum based on 'random, isolated or fortuitous' contacts with that jurisdiction." *Camelot Power LLC v. Prospect Energy Corp*, 2007 WL 4698273 (Me. Super. Aug. 9, 2007) (citing *Unicomp v. Harcros Pigments Inc.*, 994 F.Supp. 24, 28 (D. Me. 1998)).

[6] In *Fore*, the Law Court utilized Maine's long-arm statute to conclude that tax services provided by a Massachusetts accountant for a New Hampshire company that owned a golf-course in Westbrook, Maine

7

transactions.[8] In this case, McGraw-Hill is a New York based corporation and is registered as a foreign business entity with the Maine Secretary of State to conduct business within the State of Maine. McGraw-Hill has employees working in the State of Maine.[9] (Hallett Aff. ¶¶ 2-4.) In 2012, the most recent year for which final revenue data is available, McGraw-Hill generated $6,305,078 in revenue from the State of Maine. (Sacks Aff. ¶ 3.) S&P generated $1,059,140. (Sacks Aff. ¶ 4.) Further, S&P contacted the State on numerous occasions via email to provide the State Treasurer with reports and publications as well as promotional and contact information about S&P.[10] (Carlow Aff. ¶ 7.) Finally, while S&P has no employees in Maine, in May of 2011, S&P personnel met with employees of the Maine Bureau of Insurance in Gardiner, Maine. In said meeting, S&P prepared a presentation as to how S&P's rating services could be used to evaluate insurance companies within the State. (Coates Aff. ¶ 3.)

---

constituted a transaction of business in Maine. The accountant had never resided in Maine, and had never been to the golf course in Westbrook. However, the court noted "[the accountant] intentionally directed fraudulent conduct toward [the Plaintiff] in Maine and therefore had demonstrated that the cause of action is related to both the preparation of the tax returns for the golf course and his telephone call with the Plaintiff. 2012 ME 1, ¶ 11, 34 A.3d 1125 (citations omitted).

[7] In *Bickford*, the Law Court found that personal jurisdiction over an out-of-state creditor even though said creditor did not conduct business in Maine, but who refused to remedy an alleged defect in a credit report affecting a Maine debtor. The Law Court found that the defendant hospital intentionally directed its conduct toward a Maine resident, and on that basis held that the court could exercise personal jurisdiction consistent with due process. *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶¶ 14-16, 855 A.2d 1150.

[8] In *Cavers*,

[A] single transaction between a scouting director for a minor league baseball club and a player to negotiate and sign the player's contract was sufficient to establish personal jurisdiction over the club in a workers' compensation claim by the Maine-based player. Benoit's involvement in the single transaction here and his alleged statement regarding the tax returns are likewise sufficient to establish personal jurisdiction over him with regard to the transaction and the statement.

*Fore*, 2012 ME 1, ¶ 14, 34 A.3d 1125 (citing *Cavers v. Houston McLane Co.*, 2008 ME 164, ¶¶ 25, 34–35, 958 A.2d 905).

[9] In 2013, McGraw-Hill employed seven (7) active employees within the state of Maine. S&P employs zero employees in Maine. (Hallett Aff. ¶¶ 2-4.)

[10] S&P's Client Business Manager, Anthony Ivanovich and Executive Managing Director Paul Coughlin were responsible for much of the correspondence. (Pl.'s Ex. D, E). The State contends that the emails were an attempt encourage the Maine Treasury to patronize S&P for its services and further avers that the misrepresentation of S&P objectivity and independence were present in some of the communications.

8

The court finds that the Defendants' contacts in Maine are not merely fortuitous or incidental. Rather, the Defendants have purposefully availed themselves of the benefits and protections of Maine law. Based on the totality of the contacts the Defendants have with the State, it is foreseeable that the Defendants may have to defend themselves in Maine. The Defendants routinely conduct business in Maine and advertise and promote S&P by targeting Maine Businesses and governmental offices.[11] Thus, viewing the facts in the record in the light most favorable to the plaintiff for the purposes of the pending motion to dismiss, the court finds that there is a sufficient basis to conclude that the defendants availed themselves of Maine's jurisdiction through their actions.

### c. *Traditional notions of Fair Play and substantial justice*

The third part of the test concerns whether it is reasonable to require the defendant to litigate in Maine. *See Cavers*, 2008 ME 164, ¶¶ 36–40, 958 A.2d 905. The court looks to the resources of the defendant to make this determination. *Id.* ¶ 39. Because the court has found the first two prongs of the jurisdictional due process test to be satisfied "[t]he burden . . . shifts to the defendant to show that jurisdiction is improper. . ." *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993).

---

[11] In *Harriman v. Demulas Supermarkets*,

> The defendant supermarket business mailed checks to Maine, had phone calls with the Maine plaintiff's employer, advertised in Maine, and permitted the use of its private labels in Maine, but there is no indication that any representative of the defendant actually entered the state. The cause of action in that case did not arise from these contacts themselves, but rather from an accident that the plaintiff employee of a Maine supplier had while delivering goods to the defendant in Massachusetts. We held that the defendant's contacts were sufficient to convey personal jurisdiction. Here, Benoit had sufficient contact with Maine to satisfy due process requirements.

*Fore, LLC v. Benoit*, 2012 ME 1, 34 A.3d 1125, 1130 (citing *Harriman v. Demulas Supermarkets*, 518 A.2d 1035 (Me. 1986)) (citation omitted).

In determining fairness, "the court considers the number, nature and purpose of the defendant's contacts with Maine, the connection between those contacts and the cause of action, the interest of Maine in the controversy, and the convenience to both parties." *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1038 (Me. 1986) (citing *Labbe v. Nissen Corp.*, 404 A.2d 564, 570 (Me. 1979)). "[I]n most instances it is less unfair to require a non-resident defendant to try a case in a state in which he has voluntarily chosen to engage in business than to require a plaintiff to travel out of state and try his case in a jurisdiction which has no nexus whatsoever with the event which gave rise to the action." *Labbe*, 404 A.2d at 573.

In this case, the Defendants have not demonstrated that litigation in Maine would be "so gravely difficult and inconvenient" that the Defendants are at a "severe disadvantage in comparison to the [Plaintiff]." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The nature and purpose of the Defendants' contacts were not so "random, fortuitous, or attenuated" that jurisdiction is unreasonable. Finally, while the extent of S&P's activity is small compared to its activity in other parts of the United States, "[l]ess extensive activity is required where the cause of action arises out of or in connection with the defendant's forum-related activity." *Caluri v. Rypkema*, 570 A.2d 830, 833 (Me. 1990). The court believes that litigation in this action is consistent with the traditional notions of fair play and substantial justice.

### d. Recent Supreme Court Case Law

The Defendants argue that the Supreme Court's recent decision in *Walden v. Fiore*, prevents the Court's exercise of personal jurisdiction. However, *Walden* is distinguishable from the case at hand. Unlike the defendant in *Walden*, nothing about S&P's contacts with the State of Maine was "random, fortuitous, or attenuated." 134 S. Ct. 1115, 1123 (2014). In *Walden* a deputized DEA

10

agent seized a large amount of cash held by two individuals travelling from San Juan to Las Vegas through the Atlanta airport. *Id.* at 1119. The agent allegedly filed a false or misleading affidavit in support of the forfeiture of the cash. *Id.* at 1120-21. Ultimately, the legitimacy of the cash was proven and the couple brought an action against the agent in Nevada where one of the two resided. *Id.*

The Court reasoned that the Federal District Court in Nevada lacked personal jurisdiction over the defendant police officer, concluding that the officer did not share the requisite "minimal contacts" with Nevada. *Id.* at 1124–25. In particular, the Court noted "[w]e have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state."[12] *Id.* at 1122. In making such determination, the Court relied on well-established principles of personal jurisdiction to decide the case and held, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*

In establishing such connection, the Court reviewed the well-established jurisdictional principles and noted:

> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. See *World-Wide Volkswagen Corp., supra*, at 291–292, 100 S.Ct. 559. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." *Rush*, 444 U.S., at 332, 100 S.Ct. 571.

> . . .

> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. See, *e.g.*, *International Shoe, supra*, at 319, 66 S.Ct. 154 (Due process "does not contemplate that a state may make binding a judgment *in personam* against an individual ... with which the

---

[12] In *Walden*, the agent did not purposefully target Nevada or any Nevada citizen. The agent did not intend for any of his actions to have a consequence in Nevada. The Supreme Court determined that such contact with Nevada was random and attenuated to the defendant officer's action in Georgia.

11

state has no contacts, ties, or relations"); *Hanson, supra,* at 251, 78 S.Ct. 1228 ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him"). Accordingly, we have upheld the assertion of jurisdiction over defendants who have purposefully "reach[ed] out beyond" their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, *Burger King, supra,* at 479–480, 105 S.Ct. 2174, or by circulating magazines to "deliberately exploi[t]" a market in the forum State, *Keeton, supra,* at 781, 104 S.Ct. 1473. And although physical presence in the forum is not a prerequisite to jurisdiction, *Burger King, supra,* at 476, 105 S.Ct. 2174, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact. See, *e.g., Keeton, supra,* at 773–774, 104 S.Ct. 1473.

*Walden v. Flore,* 134 S. Ct. at 1122 (2014). Thus, *Walden* does not alter the well-established due process analysis necessary for establishing personal jurisdiction. Rather, the Court reiterates that the plaintiff cannot be the only link between the defendant and the forum. The defendant's conduct must form the necessary connection with the forum State that is the basis for its jurisdiction over him.[13]

The Court disagrees with Defendants' contention that *Walden* dictates the result in this case. S&P directed its activity to Maine consumers through email correspondence and targeted presentations advertising rating services. The Defendants' relationship with the State of Maine is fundamentally different from the agent's connection to Nevada in *Walden.*

## V. CONCLUSION

The entry shall be: Defendants' Motion to Dismiss is DENIED.

Pursuant to M.R. Civ. P. 79, the clerk is hereby directed to incorporate this order into the docket by reference.

---

[13] "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden,* 134 S. Ct. at 1123.

_11/26/14_
Dated

M. Michaela Murphy, Justice
Business & Consumer Docket

13

**State Of Maine v. The McGraw-Hill Companies Inc. and Standard & Poor's Financial Services, LLC.**
**BCD-CV-14-49**

**State Of Maine**
    **Plaintiff**

       Counsel:                         Linda Conti, AAG
                                         6 State House Station
                                       Augusta, ME 04333-0006

**The McGraw-Hill Companies Inc. and Standard & Poor's Financial Services, LLC**
    **Defendants**

       Counsel:                         Sigmund D. Schutz, Esq.
                                         One City Center
                                       PO Box 9546
                                       Portland, ME 04112-9546