**Alden H. MURPHY**

v.

**J. Kevin KEENAN and Reginald Monroe d/b/a Captain's Choice.**

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 7, 1995.

Decided Nov. 20, 1995.

F. Jay Meyer, Thompson, McNaboe, Ashley & Bull, Portland, for plaintiff.

J. Kevin Keenan, Captain's Choice, Meridith, NH, pro se.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Alden Murphy appeals from the judgment entered in the Superior Court (York County, *Perkins, A.R.J.*) dismissing his complaint against J. Kevin Keenan and Reginald Monroe, doing business as Captain's Choice, on the ground that the court lacked personal jurisdiction over the defendants. Unpersuaded by Murphy's contentions that there is jurisdiction over the defendants pursuant to 14 M.R.S.A. § 704–A (1980), we affirm the judgment.

In 1992, Murphy, a resident of Hollis Center, purchased a 1990 motorboat at Captain's Choice, a New Hampshire boat dealership. The boat was shown to Murphy by the defendants' representative, Brian Bushman, at their place of business in Meredith, New Hampshire. Meredith is approximately

twenty-five miles from the Maine border. Bushman conducted all the negotiations with Murphy regarding the purchase of the boat. A bill of sale was prepared by the defendants and signed by Murphy, Bushman, and Rose M. Pike. It includes Murphy's address in Hollis, and identifies Pike, of Meredith, as the seller. The bill of sale provides that the seller warrants good title to the boat, that the boat is free of liens, and that the seller will defend and hold the buyer harmless from any adverse claims. Murphy paid for the boat with a York County Teacher's Credit Union check listing his Maine address and made payable to Captain's Choice. All activities relating to the sale of the boat, including payment and delivery, took place in New Hampshire.

When Murphy purchased the boat, he was unaware that it was subject to a security interest granted by Pike to New Dartmouth Bank. In late 1993, a representative of a repossession company unsuccessfully sought to repossess the boat from Murphy's yard. In order to remove the lien and clear the title to the boat, Murphy paid $2,394.55 to New Dartmouth Bank.[1]

On May 31, 1994, Murphy filed a complaint against the defendants in the Superior Court seeking to recover damages arising from the lien on the boat. The defendants filed a motion to dismiss based on lack of personal jurisdiction. Following a hearing, the court dismissed the complaint pursuant to M.R.Civ.P. 12(b)(2). Murphy contends that the Superior Court has personal jurisdiction over the defendants and therefore erred in dismissing his complaint.

Maine's jurisdiction over nonresident defendants is controlled by its long-arm statute, 14 M.R.S.A. § 704–A,[2] as well as the due process clause of Maine's Constitution, Me. Const. art I, § 6–A. Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution, U.S. Const. amend. XIV, § 1. *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me.1993); *Frazier v. Bankamerica Int'l*, 593 A.2d 661, 662 (Me. 1991); *Caluri v. Rypkema*, 570 A.2d 830, 831 (Me), *cert. denied*, 498 U.S. 818, 111 S.Ct. 62, 112 L.Ed.2d 37 (1990); *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 2–3 (Me.1979). In order for Maine to exercise personal jurisdiction over a nonresident defendant, due process requires that (1) Maine have a legitimate interest in the subject matter of this litigation; (2) the defendant, by his conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice. *Interstate Food Processing Corp.*, 622 A.2d at 1191; *Frazier*, 593 A.2d at 662); *Harriman v. Demoulas Supermarkets, Inc.*, 518 A.2d 1035, 1036 (Me.1986), *cert. denied*, 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); *Foreside Common Dev. Corp. v.*

---

1. Rose Pike declared bankruptcy in November 1993.

2. 14 M.R.S.A. § 704–A (1980) provides in pertinent part:

    **1. Declaration of purpose.** It is declared, as a matter of legislative determination, that the public interest demands that the State provide its citizens with an effective means of redress against nonresident persons who, through certain significant minimal contacts with this State, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this State and persons of other states.

    This section, to insure maximum protection to citizens of this State, shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution, 14th amendment.

    **2. Causes of action.** Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated in this section, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

    ....

    **B.** Doing or causing a tortious act to be done, or causing the consequences of a tortious act to occur within this State.

    ....

    **I.** Maintain any other relation to the State or to persons or property which affords a basis for the exercise of jurisdiction by the courts of this State consistent with the Constitution of the United States.

**594**

*Bleisch,* 463 A.2d 767, 769 (Me.1983). It is the plaintiff's burden to satisfy the first two prongs of this test. Once the plaintiff does so, the burden then shifts to the defendant to establish that asserting jurisdiction does not comport with traditional notions of fair play and substantial justice. *Interstate Food Processing Corp.,* 622 A.2d at 1191; *Caluri,* 570 A.2d at 831; *Frazier,* 593 A.2d at 662. The plaintiff's evidence "must be based on specific facts set forth in the record and the record is to be construed in a light most favorable to the plaintiff." *Frazier,* 593 A.2d at 662 (citing *Caluri,* 570 A.2d at 831–32).

■ Murphy argues that the trial court erred because he has met his burden and that the defendants have failed to establish that Maine's asserting jurisdiction does not comport with traditional notions of fair play and substantial justice. We disagree. The only state interest that Murphy asserts is providing a Maine resident with a forum for redress against a nonresident. Although Maine has an interest in providing its citizens with a means of redress against nonresidents, *Interstate Food Processing Corp.,* 622 A.2d at 1192; *Harriman,* 518 A.2d at 1036 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)), an interest beyond mere citizenry is necessary, such as the protection of its industries, the safety of its workers, or the location of witnesses and creditors within its border. *See, e.g., Interstate Food Processing Corp.,* 622 A.2d at 1192; *Frazier,* 593 A.2d at 663; *Harriman,* 518 A.2d at 1036–37.

■ The second prong of the analysis requires an assessment of the contacts between the defendants and Maine. Due process demands that the defendant have sufficient contact with Maine to "make it reasonable ... to require the [defendant] to defend the particular suit which is brought [here]." *Interstate Food Processing Corp.,* 622 A.2d at 1192 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Contacts that result solely from "the unilateral activity of another party" do not satisfy the minimum contacts requirement. *Id.* (quoting *Heliocopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873,

80 L.Ed.2d 404 (1984)). Rather, the defendant must "purposefully avail itself of 'the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Burger King Corp.,* 471 U.S. at 474–75, 105 S.Ct. at 2183). This is achieved when a defendant "purposefully directs his activities" at Maine residents or creates "continuing obligations between himself and the residents [of Maine]." *Id.* Murphy contends that the minimum contacts requirement is met because the warranty included in the bill of sale establishes a continuing contractual obligation to him.

In *Burger King Corp.,* the United States Supreme Court clarified the extent to which a contract can constitute a contact for due process analysis:

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.... [W]e have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

471 U.S. at 478–79, 105 S.Ct. at 2185 (emphasis in original) (citations omitted).

■ It is not disputed that in the present case, all business transactions concerning the sale of the boat were conducted in New Hampshire, and that the sale was a single, isolated event between the parties. Murphy's contact with the defendants was not initiated by the defendants. There was no communication between the parties after the sale until the attempted repossession occurred. Nor was the bill of sale a contract to do business in the future.

The only provision of the bill of sale that contemplated a future relationship between the parties is the warranty provision.[3] Murphy argues that this provision created a continuing contractual obligation that establishes Maine's jurisdiction over the defendants. We disagree. A continuing contractual obligation necessary to support the exercise of jurisdiction requires ongoing contact between the parties with the expectation of conducting future business. *See Interstate Food Processing Corp.*, 622 A.2d at 1192; *Christiansen v. Smith*, 598 A.2d 176, 178 (Me. 1991); *Electronic Media Int'l v. Pioneer Communications of Am., Inc.*, 586 A.2d 1256, 1259–60 (Me.1991); *Caluri*, 570 A.2d at 832; *Harriman*, 518 A.2d at 1037. A warranty is not of the same nature as continuing contacts for business purposes and does not establish a continuing contractual obligation. Indeed, pursuant to the Uniform Commercial Code, warranties, including warranties that goods will be delivered free of encumbrances, are implied under law in nearly every sales transaction. *See* 11 M.R.S.A. § 2–312(1) (1995).

■ Murphy also contends that Maine has long-arm jurisdiction over the defendants pursuant to 14 M.R.S.A. § 704–A(2)(B). Specifically, Murphy alleges that the defendant committed tortious acts outside of Maine, i.e., that "Captain's Choice made fraudulent, or at least negligent, misrepresentations to Murphy regarding the Vessel and its title," causing injuries in Maine when there was an attempt to repossess the boat from his home.

" 'The commission outside the forum state of an act that has consequences in the forum state is by itself an insufficient contact where all the events necessary to give rise to a tort claim occurred outside the forum state.' " *Frazier*, 593 A.2d at 663 (quoting *Martin v. Deschenes*, 468 A.2d 618, 619 (1983)). The consequences in the forum state resulting from a tortious act committed outside the forum is merely a factor to be considered in light of the relevant facts that apply to the minimum contacts analysis. *Id.*

■ Murphy also argues that jurisdiction over the defendants is appropriate because it was foreseeable that the boat would enter Maine. Although the foreseeability of a product entering a state is a consideration, " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980).

> If foreseeability were the criteria, a local California tire retailer could be forced to defend in Pennsylvania when a blowout occurs there; a Wisconsin seller of a defective automobile jack could be haled before a distant court for damage caused in New Jersey; or a Florida soft-drink concessionaire could be summoned to Alaska to account for injuries happening there. Every seller of chattel would in effect appoint the chattel his agent for service of process. His amenability to suit would travel with the chattel.

*Id.* at 296, 100 S.Ct. at 566 (citations omitted). Here, the defendants' business is in close proximity to Maine, but there is nothing in the record to indicate any effort on the part of the defendants to attract or serve a market in Maine. Accordingly, Murphy has not shown that it is reasonable for the defendants to expect to defend this suit in Maine. *Id.* at 297, 100 S.Ct. at 567.

Because Murphy has failed to meet his burden to show the state's legitimate interest in the subject matter of this litigation and that the defendants reasonably should have anticipated litigation in Maine, we need not address whether the exercise of jurisdiction by Maine's courts would comport with traditional notions of fair play and substantial justice. *Interstate Food Processing Corp.*, 622 A.2d at 1191.

> The entry is:
>
> Judgment affirmed.
>
> All concurring.

---

**3.** Although the bill of sale identifies Rose M. Pike as the seller, Murphy contends that the purchase contract was between himself and the defendants.