STATE OF MAINE                           SUPERIOR COURT
CIVIL ACTION

KENNEBEC, ss.                        DOCKET NO. CV-06-257

THE WOLFINGTON GROUP,

        Plaintiff,

        v.                                 **DECISION ON MOTION**

CHESTERTOWN CHRYSLER
JEEP DODGE, LLC.,

        Defendant

This matter comes before the court on the defendant's motion to dismiss for lack of jurisdiction. The court has fully considered the pleadings, the motion, and the parties' arguments.

**Facts**

For purposes of this motion, the court will consider as true the following summary of facts. The plaintiff is a corporation organized and existing under the laws of the State of Maine, having its principal place of business in Augusta, Maine. It also has employees in New York, South Carolina, and Texas. It is in the business of producing promotional events for automobile dealers across the country. These promotional events are built around a direct mail campaign. Each dealer contracts with the plaintiff to have promotional materials advertising the sales event mailed to a certain number of individuals in that car dealer's market area. The promotional materials consist of a letter informing the recipient of the event and a voucher entitling them to a specified amount off the purchase price during the event. The letter tries to induce the recipient to attend the event by proclaiming that they are a "GUARANTEED WINNER" in a marketing test,

of "At least TWO (2) of the prizes listed above, which includes the $10,000.00 CASH prize." At the time of the sales event at the dealership, the plaintiff, in order to create the appropriate atmosphere, also sends a team of 8-10 employees to assist the dealer with the increased traffic. This team includes greeters, entertainers, and sales and finance personnel.

The defendant is a small automobile business selling new and pre-owned cars in Chestertown, Maryland and its immediate vicinity. It is not licensed to do business in the State of Maine, it has no offices in Maine, it owns no property in Maine, and none of its employees are located in or have ever traveled to Maine on business for the dealership. The dealership draws its business from about a 25-mile radius from Chestertown, including some business from Dover, Delaware, which is about 30 minutes away. The defendant has never sold, or attempted to sell, a car in Maine. It does not market to or solicit Maine customers. This is true for all forms of advertising media, including mail, radio, television, and the Internet.

In late summer 2006, the dealership's managing partner read an advertisement in the magazine Automotive News concerning organizing car sales events. He called an 800 number for more information, not knowing that he was calling a company located in Maine. He left his number with a receptionist and had his call returned by Andrew Cota, National Accounts Manager for the plaintiff, who was calling from Maine. Mr. Cota made arrangements to fly to Chestertown to provide his sales pitch and asserts that he made it clear that the plaintiff is a Maine business and that he would be flying from Maine. Upon arrival in Maryland, Mr. Cota explained the services that the plaintiff would provide, most notably, that there would be a direct mailing to

Maryland residents, with a "call center" set up to receive inquiries from the mailing. Defendant asserts that it was never informed where or when the call center would be established, and that it provided no oversight of the call center. The plaintiff asserts that Mr. Cota explained that the direct mail would be generated and sent out from Maine and that the plaintiff's employees in Maine would staff the call center. The parties then executed a contract, bearing the plaintiff's Augusta, Maine address at the dealership in Maryland.

The contract called for the plaintiff to assist with the running of two separate, 3-day sales events (one in August 2006 and one in September 2006). For the two sales events, the plaintiff flew a team of 12 people (10 of whom are Maine residents) to Maryland for the August event and a team of 10 people (9 of whom are Maine residents) for the September event to assist and help make it more successful. The contract is the only business deal the defendant has had with the plaintiff and further business in not anticipated. No pre-execution negotiations took place in Maine and issues concerning the contract were discussed by phone, fax and mail, or in person at the dealership.

The parties had a number of communications between Chestertown and Maine prior to the event concerning: the geographic scope of the dealership's market area, the timing of the direct mail drop, travel arrangements and accommodations for the team traveling to the dealership, the dealership faxed a copy of its Dealer Profile sheet to the plaintiff's Augusta office, and the plaintiff emailed proofs of the direct mail materials from Maine to the dealership, which it approved. The plaintiff sent invoices to the defendant directing that payment be remitted to the Augusta address, the defendant mailed two checks to the

plaintiff's Augusta address, and the letter from the defendant's President expressing concern about the events was sent to the plaintiff's office in Augusta.

The mailings and calls were made and two events were held. The contract provided that the plaintiff would receive a percentage of sales generated by these efforts. The plaintiff claims it did not receive the fee it should have and brings this suit. The defendant then filed the pending motion to dismiss for lack of personal jurisdiction.

## Discussion

*Murphy v. Keenan*, 667 A.2d 591 (Me. 1995) provides the oft-quoted standard for evaluating personal jurisdiction:

> Maine's jurisdiction over nonresident defendants is controlled by its long-arm statute, 14 M.R.S.A. § 704-A, as well as the due process clause of Maine's Constitution, Me. Const. art. I, § 6-A. Maine's jurisdictional reach is coextensive with the due process clause of the United States Constitution. In order for Maine to exercise personal jurisdiction over a nonresident defendant, due process requires that (1) Maine have a legitimate interest in the subject matter of this litigation; (2) the defendant, by his conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's court's comports with traditional notions of fair play and substantial justice. It is the plaintiff's burden to satisfy the first two prongs of this test. Once the Plaintiff does so, the burden then shifts to the defendant to establish that asserting jurisdiction does not comport with traditional notions of fair play and substantial justice. The plaintiff's evidence "must be based on specific facts set forth in the record and the record is to be construed in a light most favorable to the plaintiff."

*Murphy*, 667 A.2d at 593-594 (citations omitted) (quoting *Frazier v. Bankamerica Int'l*, 593 A.2d 661, 662 (Me. 1991).

Applying the facts to the *Murphy* test; first, Maine's legitimate interest in the subject matter of the litigation begins with an interest to provide redress for residents, such as the Wolfington Group, in disputes with nonresident parties. However, more than this interest is necessary. Perhaps the greatest interest of

the State of Maine in this litigation is that approximately 90% of the plaintiff's employees are from Maine and the State has an obvious interest in their compensation and continued employment. In addition, the direct mail and call center activities occurred in Maine and the mailing materials were designed and produced in Maine. Finally, various correspondence and messages necessary for setting up and executing the sales events have a Maine connection.

Although a single contract by itself may not be enough to establish personal jurisdiction, the contract in this case was not an isolated contract for the sale of goods. Rather, it required coordination between the parties to set up the sales events and travel of plaintiff's employees from Maine to Maryland to effect performance of the contract. In other words, this type of contract entails more contact and ongoing connection between the parties than in those cases which involve a simple purchase of goods.

The defendant responds by listing all of the various contacts which this contractual relationship has with the State of Maryland, the location of its business and where the sales events took place. However, the existence of these contacts and interest in Maryland beg the question of interest in Maine since it is often possible for more than one state to have jurisdiction with regard to litigation of this type.

The second prong of the test requires the plaintiff to prove that the defendant reasonably could have anticipated litigation in Maine. Many of the same factors considered in the first prong also are applicable to the second, i.e., defendant's knowledge that plaintiff was a Maine corporation, Maine employees, Maine materials and call center. Again, the distinction can be drawn between those cases cited by the defendant that have to do with the single contract for

purchase of goods versus the contract in question which entail a much more extensive and coordinated relationship between the parties and the jurisdictions. While not exactly the type of ongoing relationship between the parties at issue in *Interstate Food Processing v. Pellerito Foods, Inc.*, 622 A.2d 1189 (Me. 1993), the defendant would have had much more reason to anticipate litigation in Maine than the defendant in *Architectural Woodcraft Co. v. Reed*, 464 A.2d 210 (Me. 1983).

With regard to the third prong – whether jurisdiction in Maine meets traditional notion of fair play and substantial justice – defendant attempts to meet its burden on this prong of the test by pointing to the lack of contacts with Maine, control of the contract execution by the plaintiff, and the hardship litigation in Maine would pose for the defendant. However, the court is not persuaded since it finds that there were significant contacts with the State of Maine as noted above, and the fact that hardship to the defendant from litigation in Maine would be no different than hardship to the plaintiff through litigation elsewhere such as Maryland. In summary, the court finds personal jurisdiction over Chesterton Chrysler Jeep Dodge.

Finally, the defendant argues that even if the court finds personal jurisdiction, it should decline to exercise that jurisdiction as Maine would represent a *forum non conveniens* as to the defendant. The defendant is correct that its assumption that this litigation could probably have been brought in the State of Maryland and that this would be a much more convenient forum for the defendant than litigation in the State of Maine. However, a plaintiff is generally entitled to litigate in the forum of its choosing unless "the ends of justice strongly militate in favor of relegating the plaintiff to an alternative forum." *MacLeod v. MacLeod*, 383 A.2d 39, 42 (Me. 1978). Evaluation of the factors listed above

demonstrates that any inconvenience suffered by the defendant would be equally shared by the plaintiff if it was forced to relinquish its right to litigate in the forum of its choosing. The inconvenience to the defendant does not so greatly outweigh the reciprocal inconvenience to the plaintiff to justify declining jurisdiction in Maine.

For the reason stated, the entry will be:

Motion DENIED.

Dated: June 28 , 2007

S. Kirk Studstrup
Justice, Superior Court

THE WOLFINGTON GROUP - PLAINTIFF
254 WESTERN AVENUE
AUGUSTA ME 04330
Attorney for: THE WOLFINGTON GROUP
ROY PIERCE  - RETAINED 10/25/2006
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
ONE CITY CENTER
PO BOX 9546
PORTLAND ME 04112-9546


vs
CHESTERTOWN CHRYSLER JEEP DODGE, LLC - DEFENDANT
6407 CHURCH HILL ROAD,
CHESTERTOWN MD 21620
Attorney for: CHESTERTOWN CHRYSLER JEEP DODGE, LLC
PETER C FELMLY  - RETAINED
DRUMMOND WOODSUM & MACMAHON
245 COMMERCIAL ST.
PO BOX 9781
PORTLAND ME 04104-5081

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CV-2006-00257


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 10/25/2006

## Docket Events:

10/25/2006 FILING DOCUMENT - COMPLAINT FILED ON 10/25/2006


10/25/2006 Party(s):  THE WOLFINGTON GROUP
           ATTORNEY - RETAINED ENTERED ON 10/25/2006
           Plaintiff's Attorney: ROY PIERCE


10/25/2006 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 10/25/2006


12/11/2006 Party(s):  CHESTERTOWN CHRYSLER JEEP DODGE, LLC
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 11/29/2006
           ORIGINAL SUMMONS WITH SERVICE MADE UPON JENNIFER HARRIS ON BEHALF ON  ATTY. SANDERS


12/19/2006 Party(s):  CHESTERTOWN CHRYSLER JEEP DODGE, LLC
           MOTION - MOTION TO DISMISS FILED WITH AFFIDAVIT ON 12/18/2006
           Defendant's Attorney: PETER C FELMLY
           MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, AFFIDAVIT OF LLOYD HAAK,PROPOSED ORDER
           AND REQUEST FOR HEARING.


01/05/2007 Party(s):  THE WOLFINGTON GROUP
           OTHER FILING - OPPOSING MEMORANDUM FILED ON 01/05/2007
           Plaintiff's Attorney:  ROY PIERCE
           PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AFFIDAVIT OF LELAND
           GLYNN, AFFIDAVIT OF SECHA RICH, AFFIDAVIT OF JACALYN CRAIG AND AFFIDAVIT OF ANDREW J.
           COTA.


01/08/2007 Party(s):  CHESTERTOWN CHRYSLER JEEP DODGE, LLC
           ATTORNEY - RETAINED ENTERED ON 12/18/2006
           Defendant's Attorney: PETER C FELMLY