STATE OF MAINE
CUMBERLAND, ss.
SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2022-308

| | | |
|---|---|---|
| VICKI CURRY, as Personal Representative of the ESTATE OF DONALD M. CURRY, and DONALD M. CURRY, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER ON MOTION TO DISMISS** |
| v. | ) ) ) | |
| W. RAY CROSS and ALLHEALTH CHOICE, LLC, | ) ) ) | |
| Defendants. | ) ) | |

Before the Court is Defendants W. Ray Cross ("Mr. Cross") and AllHealth CHOICE, LLC's ("AllHealth") Motion to Dismiss pursuant to Maine Rule of Civil Procedure 12(b)(2). Plaintiffs Vicki Curry ("Ms. Curry"), as Personal Representative of the Estate of Donald M. Curry, and Donald M. Curry, LLC ("the LLC"), oppose the motion. For the following reasons, the Court denies Defendants' motion.

## I. Facts

Ms. Curry lives in Falmouth, Maine, and is a Maine resident. (V. Curry Aff. ¶ 2.) Mr. Curry passed away on November 29, 2021. (V. Curry Aff. ¶ 3.) Before his passing, Mr. Curry also lived in Falmouth, Maine, and was a Maine resident. (V. Curry Aff. ¶ 4.)

The LLC is a limited liability company established under the laws of Maine, with a principal place of business in Falmouth, Maine. (V. Curry Aff. ¶ 6.) Ms. Curry has been the manager of the LLC since Mr. Curry's passing. (V. Curry Aff. ¶ 7.)

AllHealth is a limited liability company organized under the laws of Georgia. (Cross Aff. ¶ 6.) AllHealth is a health management company with twelve employees and

four independent sales representatives. (Cross Aff. ¶¶ 7, 8.) AllHealth's only office is located in Tifton, Georgia. (Cross Aff. ¶ 8.) AllHealth has no employees or bank accounts in Maine. (Cross Aff. ¶ 9.) AllHealth is not registered to do business in Maine and has never filed a Maine tax return. (Cross Aff. ¶ 9.)

Mr. Cross is President, Co-Founder, and co-owner of AllHealth. (Cross Aff. ¶ 5.) Mr. Cross lives in Tifton, Georgia and is a Georgia resident. (Cross Aff. ¶ 3.)

For several years, AllHealth retained Ron Rieth, who lived in Arizona at all relevant times, as a sales consultant. (Cross Aff. ¶ 11.) In late 2019, Mr. Rieth introduced Mr. Curry to Mr. Cross via a telephone call. (Cross Aff. ¶ 12.) In early 2020, Mr. Cross negotiated a sales consulting agreement with Mr. Curry via telephone from his office in Georgia. (Cross Aff. ¶ 13.) Mr. Curry was based in Maine at the time. (V. Curry Aff. ¶ 10.)

The agreement written following those negotiations ("the Agreement") was executed by Mr. Cross for AllHealth and Mr. Curry for the LLC. (V. Curry Aff. ¶ 12; V. Curry Aff. Ex. 1.) The Agreement, which was in the form of a letter, was addressed to Mr. Curry at his home in Falmouth. (V. Curry Aff. ¶ 13; V. Curry Aff. Ex. 1.) The Agreement does not contain a governing law provision. (V. Curry Aff. Ex. 1.)

In March 2020, Mr. Curry began a sales consulting relationship with AllHealth pursuant to the Agreement. (Cross Aff. ¶ 15.) In his role as a sales consultant, Mr. Curry was expected to target two accounts: Blue Cross Blue Shield of Michigan and Beacon Health of Massachusetts. (Cross Aff. ¶ 16.) Mr. Curry conducted his work for AllHealth from Maine. (V. Curry Aff. ¶ 16.) Mr. Cross never met Mr. Curry in person and never traveled to Maine on business for AllHealth. (Cross Aff. ¶ 19.) It did not matter to Mr. Cross whether Mr. Curry conducted his work from Maine or elsewhere. (Cross Aff. ¶ 23.)

Mr. Curry dealt with potential clients in Maine, including Beacon Health, Northern Light, and Maine Medical Center. (V. Curry Aff. ¶ 14.) Mr. Curry and Mr. Cross

never discussed any potential accounts in Maine, and Mr. Cross was not aware of Mr. Curry's pursuit of these potential clients. (Cross Aff. ¶ 17.)

Mr. Rieth asked Mr. Cross to split his monthly sales consultant draw and his monthly commission on AultCare in Ohio with Mr. Curry, which he did. (Cross Aff. ¶ 20.) The only commission payments Mr. Curry or the LLC ever received from AllHealth were from AultCare in Ohio. (Cross Aff. ¶ 21.) Mr. Cross terminated Mr. Rieth's sales consulting agreement with AllHealth in August 2021, but AllHealth continued to pay Mr. Rieth and the LLC the commission from the AultCare account. (Cross Aff. ¶25.) AllHealth and Mr. Cross terminated the commission payments to the LLC when Mr. Curry passed away. (Cross Aff. ¶ 26.) This case arises from the termination of those commission payments.

Defendants have moved to dismiss the Complaint for lack of personal jurisdiction.

## II. Legal Standard

Pursuant to M.R. Civ. P. 12(b)(2), a defendant may plead lack of personal jurisdiction by motion. "Facts regarding jurisdictional questions may be determined by reference to affidavits, by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits." *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 12, 735 A.2d 984 (quoting *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)). When "the court proceeds only upon the pleadings and affidavits of the parties, the plaintiff need only make a prima facie showing that jurisdiction exists, and the plaintiff's written allegations of jurisdictional facts should be construed in its favor." *Elec. Media Int'l v. Pioneer Commc'ns of Am., Inc.*, 586 A.2d 1256, 1259 (Me. 1991) (quotation marks omitted).

Maine courts' jurisdiction over nonresident defendants is conferred by Maine's long-arm statute, 14 M.R.S. § 704-A (2022). The long-arm statute "is co-extensive with the

due process clause" of the Fourteenth Amendment to the United States Constitution. *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995); *see Cavers v. Houston McLane Co.*, 2008 ME 164, ¶ 17, 958 A.2d 905. Thus, Maine courts need only "consider whether due process requirements have been satisfied" when addressing the issue of personal jurisdiction. *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 4, 711 A.2d 1285.

## III.  Discussion

Maine courts have traditionally conducted the following analysis to determine whether due process is satisfied when exercising jurisdiction over a nonresident defendant: "(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Connelly v. Doucette*, 2006 ME 124, ¶ 7, 909 A.2d 221 (quoting *Com. Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 14, 861 A.2d 662). A plaintiff must satisfy the first two prongs of this test, after which the burden shifts to the defendant to "demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

### A. Maine's Interest in the Litigation

To satisfy the first prong of the due process analysis, a plaintiff must show that Maine has at least a minimal legitimate interest in the litigation. *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 4 (Me. 1979). A mere interest in providing a Maine resident with a forum for redress against a nonresident is insufficient. *Murphy*, 667 A.2d at 594. Legitimate interests include protection of industries and protection of Maine citizens from certain unfair or fraudulent practices of noncitizens that impact Maine citizens' lives or livelihoods. *See Bickford*, 2004 ME 111, ¶ 11, 855 A.2d 1150; *Suttie*, 1998 ME 121, ¶ 5, 711

A.2d 1285; *Murphy*, 667 A.2d at 594. Maine may also have an interest when a plaintiff "felt the effects of [its] injury" in Maine, or when witnesses or records are located within Maine. *Connelly*, 2006 ME 124, ¶ 8, 909 A.2d 221.

Although not independently sufficient, Maine certainly has an interest in providing a forum for redress of the grievances of a Maine resident's estate and a Maine LLC. Additionally, Plaintiffs allege that the effects of their injuries were felt in Maine; namely, the cessation of commission payments to which Plaintiffs allege they were entitled. Moreover, at least one key witness and the records of the LLC are located in Maine. Plaintiffs have met their burden on the first prong.

## B. Reasonable Anticipation

A nonresident defendant may reasonably anticipate litigation in a particular forum when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Connelly*, 2006 ME 124, ¶ 9, 909 A.2d 221 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This analysis requires an examination of the defendant's contacts with the forum state that are related to the plaintiff's claims. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1024-25 (2021); *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Murphy*, 667 A.2d at 594. A defendant meets the minimum contacts standard when the defendant purposefully directs his or her activities at Maine residents or creates continuing obligations between himself or herself and the residents of Maine. *Murphy*, 667 A.2d at 594.

Following negotiations that took place while Mr. Curry was based in Maine, the parties executed the Agreement, which contemplated an ongoing professional relationship. Their relationship involved continuing obligations to perform work for AllHealth on Mr. Curry's side, and to send commission and retainer payments on

AllHealth and Mr. Cross's side. Although the Agreement did not require Mr. Curry to perform his work from Maine, he did in fact do so.

Defendants' attempt to distinguish this case from *Cavers v. Houston McLane Co.*, 2008 ME 164, 958 A.2d 905, on the grounds that *Cavers* involved a contract for employment (whereas Mr. Curry was a consultant), is not entirely convincing. Although the relationship between the parties here may differ from the relationship between the parties in *Cavers*, the contacts in each case are more alike than unalike.

In *Cavers*, the defendant-employer came to Maine to negotiate and execute an employment contract with a Maine resident, which was sufficient for the employer to have reasonably anticipated the subsequent workers' compensation claim in Maine. *Id.* at ¶ 35. Although Mr. Cross did not physically travel to Maine for negotiations, he engaged in negotiations over the phone with a Maine resident and Maine LLC while Mr. Curry was in Maine. Those negotiations anticipated and culminated in ongoing obligations between the parties, including direction of recurring payments to a Maine company and other communications. Plaintiffs have met their burden on the second prong.

## C. Traditional Notions of Fair Play and Substantial Justice

The burden shifts to Defendants on the third and final step of the due process analysis. *See Bickford*, 2004 ME 111, ¶ 10, 855 A.2d 1150. This step requires the Court to determine whether the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. The Court must "consider the number, nature, and purpose of the defendant's contacts with Maine, the connection between those contacts and the cause of action, the interest of Maine in the controversy, and the convenience to both parties." *Id.* ¶ 14 (quoting *Jackson v. Weaver*, 678 A.2d 1036, 1039 (Me. 1996)).

Defendants' contacts with Maine include the initial negotiations, execution of the Agreement with a Maine LLC, recurring payments to the LLC, and occasional communications between Mr. Cross and Mr. Curry by telephone and email. The communications between the parties concerned business and the Agreement, including the very subject of the litigation—Mr. Curry's commission payments. Although litigating in Maine may be inconvenient to Defendants because Mr. Cross is based in Georgia, Defendants have not pointed to any significant challenges posed by litigating in Maine. Litigating in Maine, where Ms. Curry and the LLC's records are located, is certainly more convenient for Plaintiffs. Defendants have, therefore, failed to meet their burden.

## IV.    Conclusion

For the foregoing reasons, the Court determines that it may properly exercise personal jurisdiction over each of the Defendants.

The entry is:

Defendants' Motion to Dismiss is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _December 6, 2022_

_MaryGay Kennedy, Justice_
Maine Superior Court