STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-2022-261

MARK ROBACK,                          )
                                      )
            Plaintiff,                )
                                      )
    v.                                )        **ORDER ON DEFENDANT**
                                      )        **HOMEAWAY.COM, INC.'S**
DAVID JOWETT, CARRIE JOWETT,          )        **MOTION TO DISMISS**
MORTON & FURBISH RENTAL               )
AGENCY, and HOMEAWAY.COM,             )
INC. d/b/a VRBO.COM,                  )
                                      )
            Defendants.               )

Before the Court is Defendant HomeAway.com, Inc.'s ("HomeAway") Motion to

Dismiss pursuant to Maine Rule of Civil Procedure 12(b)(2) and 12(b)(6).[1] Plaintiff Mark

Roback opposes the motion. For the following reasons, the Court grants HomeAway's

motion.

## I.    Facts

Plaintiff resides in East Bridgewater, Massachusetts. (Am. Compl. ¶ 1.) Defendants

David and Carrie Jowett ("the Jowetts") reside in Cumberland, Maine. (Am. Compl. ¶¶

2-3.) The Jowetts own property located at 12 Sunrise Road in Rangely, Maine ("the

Premises"). (Am. Compl. ¶ 6.) Defendant Morton & Furbish Rental Agency ("Morton &

Furbish") is a corporation headquartered in Rangely, Maine. (Am. Compl. ¶ 4.)

Defendant HomeAway is a foreign corporation incorporated in the State of Delaware.

(Am. Compl. ¶ 5.)

---

[1] Although HomeAway filed this motion to dismiss the original Complaint, the Court has since granted
Plaintiff's unopposed Motion to Amend Complaint to substitute the proper party, which is HomeAway.
The Court will evaluate HomeAway's motion with respect to the Amended Complaint.

REC'D CUMB CLERKS OFC
DEC 9 '22 PM3:07

HomeAway operates websites that allow third parties to list their properties for rent or rent properties from other third-party homeowners or property managers. (Miers Aff. ¶¶ 5, 7; Strite Aff. ¶ 4; McKeon Aff. ¶ 4.) HomeAway is not incorporated in Maine, nor is its principal place of business located in Maine. (Miers Aff. ¶¶ 6, 9.) In fact, HomeAway does not have any physical offices, mailing addresses, phone numbers, bank accounts, or employees in Maine. (Miers Aff. ¶¶ 22, 25, 27.) HomeAway does not host its websites from Maine. (Miers Aff. ¶ 30.) HomeAway did not specifically direct any marketing to or otherwise target Maine residents seeking vacation rentals. (McKeon Aff. ¶¶ 5-6.)

HomeAway does not own, possess, operate, maintain, manage, control, lease, offer to lease, rent, or place for rent any vacation rentals located in Maine, including the Premises. (Miers Aff. ¶¶ 19-20; Strite Aff. ¶ 4.) Third-party homeowners or property managers, known as "Members," maintain exclusive control over their properties listed on HomeAway's websites. (Miers Aff. ¶¶ 5, 7, 16-18.) HomeAway is not a party to rental agreements formed between Members and renters for properties listed on HomeAway's website. (Miers Aff. ¶¶ 5, 20; Strite Aff. ¶ 4.) HomeAway's Terms and Conditions, which users of its websites must agree to in order to book rentals through its websites, advise that HomeAway does not own the listed properties, is not a party to the rental agreement, and is not responsible for the safety, condition, quality, or management of the properties. (Miers Aff. ¶¶ 8-15, 33, Ex. 1 at § 1.)

On or around December 9, 2020, Plaintiff visited one of HomeAway's websites, VRBO ("the Website"), to inquire about renting the Premises. (Roback Aff. ¶¶ 3-4.) Plaintiff sent an inquiry about the Premises to a virtual agent through the Website. (Roback Aff. ¶¶ 3-4.) On December 14, 2020, Plaintiff received a written response from a

person named Ethna, who provided him with the address of the Premises and told him to use the "Book Now" button to book the rental. (Roback Aff. ¶¶ 5-7.)

Plaintiff used the "Book Now" button on the Website to book the rental of the Premises. (Roback Aff. ¶ 8.) Plaintiff paid a fee to book the rental. (Roback Aff. ¶ 9.) HomeAway collected a service fee in connection with the booking solely for the use of the Website, not occupancy of the Premises. (Miers Supp. Aff. ¶¶ 23-24.)

Plaintiff and his family arrived in Maine on December 23, 2020, and gained entry to the Premises. (Roback Aff. ¶¶ 13-14.) While at the Premises, Plaintiff was injured. (Roback Aff. ¶ 19; Am. Compl. ¶¶ 11-15.) Plaintiff returned home with his family. (Roback Aff. ¶ 20.)

Through the Website, Plaintiff communicated with several people regarding the booking, the Premises, and Plaintiff's injury at the Premises, including persons named Ethna, Beth, and Melinda. (Roback Aff. ¶¶ 5-8, 12, 14, 16, 20-22.) Plaintiff's understanding was that HomeAway "facilitated" and "managed" the rental. (Roback Aff. ¶¶ 9, 22-23.) Plaintiff believed that his virtual communications through the Website were with HomeAway's agents. (Roback Aff. ¶ 22.) The parties dispute whether these persons were, in fact, HomeAway's agents. At the time of his stay at the Premises, Plaintiff was unaware of Morton & Furbish's involvement in managing the Premises. (Roback Aff. ¶ 23.)

HomeAway has moved to dismiss the claims in the Amended Complaint asserted against it for lack of personal jurisdiction or, alternatively, for failure to state a claim.[2]

## II. Legal Standard

Pursuant to M.R. Civ. P. 12(b)(2), a defendant may plead lack of personal jurisdiction by motion. "Facts regarding jurisdictional questions may be determined by

---

[2] Because the Court finds that it cannot exercise jurisdiction over HomeAway, the Court does not further discuss the alternative basis for HomeAway's motion.

reference to affidavits, by a pretrial evidentiary hearing, or at trial when the jurisdictional issue is dependent upon a decision on the merits." *Dorf v. Complastik Corp.*, 1999 ME 133, ¶ 12, 735 A.2d 984 (quoting *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992)).

Maine courts' jurisdiction over nonresident defendants is conferred by Maine's long-arm statute, 14 M.R.S. § 704-A (2022). The long-arm statute "is co-extensive with the due process clause" of the Fourteenth Amendment to the United States Constitution. *Murphy v. Keenan*, 667 A.2d 591, 593 (Me. 1995); *see Cavers v. Houston McLane Co.*, 2008 ME 164, ¶ 17, 958 A.2d 905. Thus, Maine courts need only "consider whether due process requirements have been satisfied" when addressing the issue of personal jurisdiction. *Suttie v. Sloan Sales, Inc.*, 1998 ME 121, ¶ 4, 711 A.2d 1285.

## III. Discussion

Maine courts have traditionally conducted the following analysis to determine whether due process is satisfied by the exercise of jurisdiction over a nonresident defendant: "(1) Maine has a legitimate interest in the subject matter of the litigation; (2) the defendant, by his or her conduct, reasonably could have anticipated litigation in Maine; and (3) the exercise of jurisdiction by Maine's courts comports with traditional notions of fair play and substantial justice." *Connelly v. Doucette*, 2006 ME 124, ¶ 7, 909 A.2d 221 (quoting *Com. Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 14, 861 A.2d 662). A plaintiff must satisfy the first two prongs of this test, after which the burden shifts to the defendant to "demonstrate that the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice." *Bickford v. Onslow Mem'l Hosp. Found., Inc.*, 2004 ME 111, ¶ 10, 855 A.2d 1150.

### A. Maine's Interest in the Litigation

To satisfy the first prong of the due process analysis, a plaintiff must show that Maine has at least a minimal legitimate interest in the litigation. *Tyson v. Whitaker & Son, Inc.*, 407 A.2d 1, 4 (Me. 1979). A mere interest in providing a Maine resident with a forum for redress against a nonresident is insufficient. *Murphy*, 667 A.2d at 594. Legitimate interests include protection of industries and protection of Maine citizens from certain unfair or fraudulent practices of noncitizens that impact Maine citizens' lives or livelihoods. *See Bickford*, 2004 ME 111, ¶ 11, 855 A.2d 1150; *Suttie*, 1998 ME 121, ¶ 5, 711 A.2d 1285; *Murphy*, 667 A.2d at 594. Maine may also have an interest when a plaintiff "felt the effects of [its] injury" in Maine, or when witnesses or records are located within Maine. *Connelly*, 2006 ME 124, ¶ 8, 909 A.2d 221.

Plaintiff is a Massachusetts resident. No Maine resident's life or livelihood is at stake. No Maine industries are threatened. However, some witnesses and parties, including the Jowetts and Morton & Furbish, are located in Maine, some physical evidence is located in Maine, and, most importantly, Plaintiff's injury occurred in Maine. Plaintiff has met his burden on the first prong.

### B. Reasonable Anticipation

A nonresident defendant may reasonably anticipate litigation in a particular forum when there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Connelly*, 2006 ME 124, ¶ 9, 909 A.2d 221 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This analysis requires an examination of the defendant's contacts with the forum state that are related to the plaintiff's claims. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ___, 141 S. Ct. 1017, 1024-25 (2021); *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Murphy*, 667 A.2d at 594. A defendant meets the minimum contacts standard when the defendant purposefully directs his or her activities

at Maine residents or creates continuing obligations between himself or herself and the residents of Maine. *Murphy*, 667 A.2d at 594.

HomeAway provides a website that hosted the Jowetts' and possibly other Maine residents' listings. In theory, if a Maine resident uses the Website to book a rental, HomeAway may collect a service fee from the Maine resident for the use of the Website.[3] However, HomeAway does not target Maine residents. Plaintiff does not seriously dispute that HomeAway owns no property, manages no property, and maintains no property in Maine.

Plaintiff has alleged that, while he was in Maine, he engaged in some communications through the Website with people who he believed were HomeAway's agents. Plaintiff and HomeAway dispute whether these people were HomeAway's agents. However, even if they were HomeAway agents, those communications cannot fairly be said to be contacts "with Maine" because Plaintiff is not a Maine resident. Although Plaintiff was physically located in Maine for some communications, this clearly does not meet the minimum contacts threshold.

Plaintiff has not shown that HomeAway deliberately directed any conduct toward Maine residents or formed any continuing obligation to the residents of Maine. Plaintiff has failed to satisfy the second prong.

## C. Traditional Notions of Fair Play and Substantial Justice

---

[3] Federal courts require something "more" than maintenance of a generally available website to exercise jurisdiction over a defendant in the forum. *See, e.g., Motus, LLC v. Cardata Consultants, Inc.*, 23 F.4th 115, 125 (1st Cir. 2022). The "more" may be intentional targeting of forum residents as customers, initiation of contacts with forum residents, or evidence that the website has generated "substantial revenue from forum residents." *Id.* (quoting *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020)). The record in this matter does not contain any evidence of something "more" that would justify the exercise of jurisdiction over HomeAway in Maine.

Because Plaintiff has not met his burden on the second step of the analysis, the Court need not proceed to the third step. However, even if Plaintiff had met his burden, the result on the third step would still require dismissal.

The third and final step of the due process analysis requires the Court to determine whether HomeAway has met its burden of demonstrating that the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. *See Bickford*, 2004 ME 111, ¶ 10, 855 A.2d 1150. The Court must "consider the number, nature, and purpose of the defendant's contacts with Maine, the connection between those contacts and the cause of action, the interest of Maine in the controversy, and the convenience to both parties." *Id.* ¶ 14 (quoting *Jackson v. Weaver*, 678 A.2d 1036, 1039 (Me. 1996)).

Once again, HomeAway's contacts with Maine, on this record, are limited to (1) maintaining a generally available website that may be accessed from Maine, and (2) potentially collecting a fee from Maine residents who use the Website to book rentals. Although Plaintiff accessed the Website to book the Premises and communicate with people he believed to be HomeAway's agents, Plaintiff is not a Maine resident, so this interaction was not a contact with Maine. No fee was collected from a Maine plaintiff in this case. The connection between HomeAway's maintenance of a website accessible from Maine and Plaintiff's injury at the Premises is weak.

Moreover, Maine's interest in the controversy is not as significant as a case involving a Maine plaintiff or even a nonresident plaintiff who received medical care for his injury in Maine. Although Maine is surely a convenient venue for the Jowetts and Morton & Furbish, as well as Plaintiff, it is not convenient to HomeAway, a Delaware corporation. On the balance, HomeAway has demonstrated that the exercise of

jurisdiction over it in Maine would not comport with traditional notions of fair play and substantial justice.

## IV.    Conclusion

For the foregoing reasons, the Court determines that it cannot exercise jurisdiction over HomeAway.

The entry is:

> Defendant HomeAway.com, Inc.'s Motion to Dismiss is GRANTED. All Counts of the Amended Complaint against HomeAway are DISMISSED as to HomeAway.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___12/9/2022___

_____
MaryGay Kennedy, Justice
Maine Superior Court